## Ezell *et al.*, commissioners, *vs.* Thrasher.

Where one traveled about, carrying with him all the tools, ladders etc., necessary to putting up and repairing lightning rods, and charged for putting rods on houses a certain amount per foot and a certain amount for points, a part of the charge being for putting them up, and where he did not sell any lightning rods without putt ng them up, he was not a peddler, and was not subject to the forfeiture provided for in §533 of the Code for peddling without a license.

*a.*) The *status* of itinerant lightning rod dealers has received a legislative construction in the general tax act of 1884.

May 1, 1886.

Peddlers. Tax. Words and Phrases. Before Judge Lawson. Putnam County. At Chambers. October 3, 1885.

Reported in the decision.

Joseph S. Turner, by Harrison & Peeples, plaintiffs in error.

W. B. Wingfield, by Newman & Ellis, for defendant.

Jackson, Chief Justice.

The question made in this record is, whether the defendant in error was subject to the forfeiture or penalty of one hundred dollars for not taking out license as a peddler under section 533 of the Code. The following is the agreed

v 75-52

statement of facts upon which the court below held he was not so liable:

"A. H. Thrasher carries with him all the tools, ladders, etc., necessary to putting up and repairing lightning rods. He charges forty cents per foot and three dollars for the points for putting lightning rods on houses; that a part of this charge is for putting them up; that he has never sold any lightning rods without putting them up, and could sell such cheaper by not putting them up; that W. H. Hearn (hardware dealer in Eatonton, Ga ) put up lightning rods for thirty cents per foot, including points; that he charges for putting them up, and could sell much cheaper not putting them up; that defendant carries his rods and tools in wagons and solicits patronage from house to house."

By section 533 of the Code it is enacted, "If any person, except a disabled soldier of this state, peddles without first obtaining such license in counties where the ordinaries take no action regulating peddling, he forfeits to the county one hundred dollars for the first act of peddling, and for each month thereafter twenty-five dollars."

By section 528, among sources which make up part of the county revenue, as the 6th item, is "from licenses to peddle."

By section 529, the license fee "to peddle in the county, unless otherwise provided for by the ordinary under the law, is $50.00."

It is for failure to take out this license that defendant had execution issued against him for the forfeiture of one hundred dollars, and which he met by affidavit of illegality, and which affidavit of illegality was sustained by Judge Lawson under the aforesaid agreed facts.

The naked question is, therefore, this: did he peddle without a license, under section 533?

We do not think that he is a peddler under this section. He is rather a traveling mechanic, soliciting work from house to house, carrying his tools with him, and the rods necessary for his use as material in erecting or repairing lightning rods where he gets a job. He sells nothing that he does not affix to the house. He travels not to sell a single foot of material—not an inch of his rods; therefore

he does not peddle them. He carries them not to peddle· them, but as a skilled mechanic to repair with them rods. which need repair, or to erect rods where there are none;, and he charges by the foot for the work done and the material with which it is done as one job. If a carpenter· went from house to house to get jobs to cover the houses. and took shingles in wagons to use, and charged only so· much for covering the house, material and all, he would hardly be called a peddler; or if a painter traveled about to get jobs in painting, taking paint with him to use only when he got the job; or if a tinker, taking tin with him, seeks jobs of repairing or making gutters,—neither selling either apart from their work, neither would be a peddler; yet it is not easy to distinguish these from this itinerant workman on lightning rods, furnishing the material to repair or erect them; and so the general assembly seem to think in the language used in the tax act of 1884, for the years 1885 and 1886; for therein peddlers are taxed so much for vending their goods, and itinerant lightning rod dealers are separately taxed. See acts of 1884, p. 22.

If this man went about selling lightning rods from house to house, he would be a peddler in the sense of that word as construed in the case of *Gould & Co. vs. The City of Atlanta*, 55 *Ga.*, 678, and in all the dictionaries, as one who travels about and sells commodities; for lightning rods would be a commodity for sale as any other. But, by the agreed facts, this man did not sell one foot to anybody; he only repaired or erected rods for people who employed him to do the job, and furnished the material necessary for the job, but sold nothing that he did not affix to the house, as one skilled in the business alone could do, and charged for· the job by the foot for the rods put up and the points used,. including his skill and labor in affixing the·lightning rods and points to the freehold, the home, the house, the realty. He was an itinerant dealer in putting up and repairing lightning rods which he furnished to those who employed him, and traveled to get such jobs of work.

Judgment affirmed.