## McCOY v. THE STATE.

1. An affidavit by the plaintiff in error, that "he is, because of his poverty, unable to pay the costs" in the case, fully complies with the requirement of the statute as to taking criminal cases to the Supreme Court on affidavits in forma pauperis.

2. Where an accusation for cheating and swindling charged that the accused fraudulently procured ten dollars in money from the prosecutor, evidence that the accused procured from the prosecutor and had cashed a draft for ten dollars was admissible.

3. Though it was erroneous to admit, over the objection of the accused, secondary evidence of a fact, by subsequently admitting such fact in his statement to the jury he lost the right to except to the ruling.

4. The evidence did not authorize the verdict, and the court erred in not granting a new trial.

Submitted October 18,—Decided November 13, 1905.

Accusation of cheating and swindling. Before Judge Carter. City court of Baxley. September 1, 1905.

Lawrence McCoy was convicted, in the city court of Baxley, of being a common cheat and swindler, under an accusation based upon the act of the General Assembly of August 15, 1903 (Acts 1903, p. 90). His motion for a new trial being overruled, he excepted. The accusation charged that the accused, on December 1, 1903, in the county of Appling, contracted with the prosecutor to work for him as a laborer, with intent to procure money from him and not to perform such service, and thereby procured from the prosecutor ten dollars in money, and after procuring the same failed to perform the labor in pursuance of the contract, to the loss and damage of the prosecutor in the sum of ten dollars. On the trial the prosecutor testified: "On the 29th day of November, 1903, this defendant came to my place and wanted to borrow from me the sum of ten dollars, and he wanted to cut boxes for me and work for me after Christmas. I first refused to loan him the money, knowing that he was at work for the Kirkland boys, but he stated to me that he wanted to work for me the next year, and that he was out of debt to the Kirkland boys, and that if I would let him have the ten dollars he would come to my place after Christmas and work for me. . . Defendant agreed that if I would let him have the ten dollars he would come back after Christmas and work for me. I did not have the ten dollars to let the defendant have in money; so I drew a draft on my factors and gave to him for the sum of ten dollars.

The draft was of the value of ten dollars. I have been damaged, I consider, more than ten dollars by the failure of this defendant to complete his contract. He has never up to this time completed his contract. This all occurred in Appling county, this State. The defendant was to cut boxes for me after Christmas, and do work, too, during the year on my turpentine place. . . After Christmas, the defendant came to me and told me that Rich Kirkland claimed an account against him of six dollars, and stated that he was ready to go to work and wanted me to pay the account of some four or six dollars for shoes to Rich Kirkland. I told him I would not do so, and told him that it would be satisfactory with me for him to go back to Rich Kirkland and work out the shoes, and that he could then come to my place and work out what he owed me. He came to see me twice about going to work for me before he went to work for me. That he could work it out in one week and come back and go to work. Just about the 12th of March, before box season was out, he came to my place, and came on Monday morning, and commenced cutting boxes and cut boxes for me one or two days, and then I had him to . . go to work cornering boxes, and he worked at that until Friday of that week, and told me that he had left his family and would go and see how they were, and would return on the following Monday morning, but did not make any provision about going back the following Monday morning. His wife died, so I am informed, about the month of October. My woodsman and myself counted the boxes he cut, and his work, less the amount of rations he got to live on while he was at work, amounted to two dollars and fifty-seven cents, for which amount I credited him. I have never seen the draft I gave him since I gave it to him, and do not know whether the factors have ever paid it or whether it has ever been presented for payment. The defendant's family lived seven miles from where he did this work. I do not know whether defendant's wife ever recovered from this illness defendant referred to when he left my place on that Monday morning, or not. . . I know I paid my factors the ten dollars for the draft." Another witness for the State testified that the accused admitted to him that Mr. Davis, a son-in-law of the prosecutor, "cashed" the draft for the accused. The accused, in his statement to the jury, admitted that he procured "the draft" from the prosecutor.

*J. H. Thomas* and *V. E. Padgett,* for plaintiff in error.

*N. J. Holton, solicitor,* contra.

FISH, C. J. 1. Counsel for the State moved to dismiss the writ of error, on the ground that the plaintiff in error had not paid the costs, nor, in lieu thereof, made an affidavit in accordance with the statute. There is an affidavit by the plaintiff in error, properly entitled, attached to the bill of exceptions, in which the affiant makes oath "that he is, because of his poverty, unable to pay the cost in said case." This affidavit fully complies with the requirements of the statute. Counsel for the State relied on *DeLoach* v. *Richards,* 94 *Ga.* 730, but the ruling there made is not in conflict with what is here held. That case, as was stated, in *Barnes* v. *State,* 105 *Ga.* 830, is incorrectly reported. The record thereof of file in this court shows that the affidavit there in question conjunctively stated that the affiant was unable to pay the costs *and* give security, thus failing to affirmatively show that he was unable to pay the costs.

2. The accused objected to the testimony of the prosecutor, that he drew a draft on his factors for the sum of ten dollars and gave it to the accused, on the grounds, that the accusation charged that the accused procured ten dollars in money from the prosecutor, and this charge could not be sustained by proof that a draft for ten dollars was so procured; and that the draft, being in writing, was the highest evidence of its contents. The first objection would have been meritorious, if the State had offered no evidence to show that the accused procured the money for which the draft called; but as the prosecution introduced such evidence, the objection was without merit. While the charge in the accusation that the accused procured from the prosecutor ten dollars in money could not be sustained by mere proof that he procured from the prosecutor a draft for ten dollars, yet if this evidence was followed by proof that the accused had the draft cashed, this would be equivalent to his procuring the money from the prosecutor. In State *v.* Palmer, 40 Kan. 474, the indictment charged that the accused obtained money under false pretenses. The proof was that he obtained a check, which was cashed out of money deposited in bank by the drawer of the check. It was held that there was no variance between the charge and the proof. Similar rulings were made in Dimick *v.* People, 117 N. Y. 13, and Adams *v.* People, 25 Colo. 532 (2).

3. Whatever merit there was in the other objection to the evidence in question, the accused lost the benefit of the objection when he subsequently admitted, in his statement to the jury, that he had procured "the draft" from the prosecutor, clearly referring to the draft described by the prosecutor in his testimony, as this was the only draft which had been mentioned or alluded to in the case.

4. The evidence did not warrant a verdict of guilty, and the court, for this reason, erred in not granting a new trial. As was said in *Glenn* v. *State*, 123 *Ga.* 585, before one can be lawfully convicted of a violation of the statute upon which this accusation was based, there must be proof of a distinct and definite contract for service. No such contract was proved in the present case. The charge in the accusation was, that the accused did contract with the prosecutor to perform service as a laborer for him, with intent to procure money and not perform such service, and did thereby procure from the prosecutor ten dollars in money, and after procuring the money did not perform the labor as contracted, to the loss and damage of the prosecutor, etc. It is therefore clear that, in order to make out the case, the State had to prove that there was an existing contract at the time the accused procured the ten dollars from the prosecutor; for the accused, after having procured the ten dollars, could not contract with the prosecutor with intent to procure it. We must look, then, for the contract upon which the accused procured the money, to what occurred before or at the time that the prosecutor gave the accused the draft for ten dollars. Upon this subject the prosecutor testified as follows: "On the 29th of November, 1903, this defendant came to my place and wanted to borrow from me the sum of ten dollars, and he wanted to cut boxes for me and work for me after Christmas." The accused "agreed that if I would let him have the ten dollars he would come back after Christmas and work for me. I did not have the ten dollars . . ; so I drew a draft on my factors and gave to him for the sum of ten dollars. . . The defendant was to cut boxes for me after Christmas, and do work, too, during the year on my turpentine place." What, then, was the agreement or promise of the accused upon the faith of which he obtained the draft for ten dollars from the prosecutor? It was that he would come back after Christmas and work for the prosecutor on the latter's turpentine place. At what time after Christmas he was to come back and work for the prosecutor was not

stated. How long he was to so work was not disclosed. How he was to work, whether by the day, by the week, by the month, or by the year, or whether he was to be paid according to the amount of work he should do, is left by this evidence to mere conjecture. So, too, it is utterly impossible from this testimony to ascertain what wages, if any, the accused was to receive for his work. The contract, if such there was, was indefinite as to the time when service thereunder should begin, indefinite as to the time during which such service should continue, and wholly silent as to the compensation which should be paid for such service. Even if, by a strained construction of this testimony, it could be inferred that the accused was to work for the prosecutor until the debt contracted for the loan of ten dollars should be discharged, there is absolutely no way of ascertaining how much work, in time or quantity, the accused was to do in order to discharge this indebtedness, for the contract discloses no measure of compensation by which to estimate the value of his work. The accused did come back to the prosecutor's place after Christmas, and work thereon, by cutting and cornering turpentine boxes. This is all that he expressly agreed to do. Whether the work which he did was, as to time or quantity, sufficient to comply with the contract, interpreted as above indicated, can not, for the reasons given above, be ascertained from the testimony. It is true that the prosecutor sought, by his own testimony, to show that the accused did not perform his contract, by testifying that the work which the accused did for him, less the amount of rations which he got to live on while at work, amounted to two dollars and fifty-seven cents; but how or where the witness got the measure of value by which to estimate, in money, the work done by the accused does not appear. He certainly did not get it from anything that appears in the agreement between the parties, and it does not even appear what was the market value of the work done. Of course the mere statement by the prosecutor, in his testimony, that the accused had never completed his contract is of no probative value whatever, being a mere conclusion of the witness. The question whether the accused completed the performance of his contract was for the jury, and not for the witness. The statute involved in this case provides, that if any person shall contract with another to perform for him services of any kind, with intent to procure money or other thing of value thereby, and not to perform the service con-

tracted for, etc., he shall be deemed a common cheat and swindler. A criminal statute must be construed strictly. It is clear, therefore, that, before there can be a lawful conviction under this statute, the evidence must show a contract for service which is so distinct and definite as to its terms that nothing essential is left to be supplied by mere inference or conjecture. When the contract relied on is for a term of service which the parties have left indefinite and unascertainable from their agreement, it is insufficient to support a prosecution under this statute.

*Judgment reversed. All the Justices concur.*