## 250.  ANDREWS *v.* JOHN CHURCH COMPANY.

1. A writ of error will not be dismissed by this court for mere informality or lack of formal statements, where the alleged errors sought to be corrected can be clearly gathered from the bill of exceptions alone, or from an examination of the bill of exceptions and the record transmitted therewith.

2. A demurrer to a plea of a defendant in an action on a written contract promising to pay a stated sum of money, which plea set up a parol contract made before the execution of the written contract, by the terms of which payments on said contract were to be made in specifics, and not in money, was properly sustained.

3. The title of the holder of a conditional contract of sale, transferred or indorsed in writing, can not be inquired into unless it appears that the inquiry would in some way protect the defendant or let in a meritorious

defense; but an entry on the contract in these words, "For value received, we hereby guarantee the payment of the within conditional purchase contract, and waive presentation, demand, protest, notice of nonpayment, and notice of protest," is not a transfer nor an indorsement. These words conveyed no title either in the paper or the property described therein, did not make the plaintiff a holder of the instrument in question, and gave the plaintiff no right of action against the maker.

4. Consequently it was error to admit such contract in evidence, and to direct a verdict for the plaintiff.

Complaint, from city court of Atlanta—Judge Reid. November 21, 1906.

Argued March 29,—Decided April 4, 1907.

T. C. Battle, for plaintiff in error.    W. A. Fuller, contra.

RUSSELL, J.  1. The plaintiff in error made a motion to dismiss the writ of error, upon the ground that the assignment of error is too general to be considered by the court, and upon the further ground that the bill of exceptions does not plainly specify the decisions complained of and the errors alleged.  The whole question on a motion to dismiss is whether the errors complained of are so presented as to be clearly understood by this court in determining the rights of the parties.  We do not think there is any merit in the motion to dismiss.  It is true that the bill of exceptions does not set forth a brief of the evidence, eo nomine; and, for that reason, we can not know or consider as evidence that which is not presented; but as to all the rulings of the court which are material to be considered the bill of exceptions is both clear and full, and the plaintiff in error, after a very minute recital of her various contentions and objections as defendant in the court below, with a distinct statement of the ruling of the court as to each, "assigns as error the rulings of the court heretofore specifically set out, refusing to allow him to introduce evidence heretofore set out, and upon the close of the case directing a verdict and entering up judgment, both special and general."  The bill of exceptions is really unnecessarily full.  It purports to give verbatim the greater number of the questions asked by defendant's counsel, his objections and contentions, and to quote (as certified to be true) the exact language used by the judge in his various rulings.  Certainly we are not able to say, having an exact reproduction or photograph of what occurred at the trial before us, and these different matters assigned as error, that there is not enough in the record to enable us to de-

36

termine the errors complained of. It is true that there is no formal statement that exception was taken to the rulings of the court at the time of the trial or of the ruling. But this is purely *formal.* Under the Civil Code, § 5569, the real question which determines whether a bill of exceptions is or is not able to resist a motion to dismiss is whether or not there is such an assignment of error as will enable this court to know what are the specific grounds of complaint, and whether there is enough in the bill of exceptions alone, or in the bill of exceptions and the record taken together, to enable this court to pass upon the questions at issue. There is no difficulty in this case in determining either what errors are complained of, or whether the complaints are justified by law. Especially is this true as to the error in admitting in evidence the instrument upon which the action is based, and the written entry thereon, over defendant's specific objection that such entry was neither an indorsement nor a transfer, and showed no title in the plaintiff. The motion to dismiss is therefore overruled.

2-4. The John Church Company brought suit against Mrs. Andrews on a contract of sale of a piano, which was as follows:

"This contract is given subject to the approval of McArthur & Sons Co. No agent is authorized to make any contract or verbal promise differing in anywise from that written and printed herein, or to collect money thereon, unless he presents proper authority from McArthur & Sons Co.

"$350.00. Atlanta, Ga., Aug. 20, 1903. Received of McArthur & Sons Co., under conditional contract for the sale thereof, as hereinafter stated, one Harvard Piano, Style G, No. 13507, on which I have this day paid ten dollars, and in addition hereby promise to pay McArthur & Sons Co., or order, the sum of three hundred and forty dollars, with interest from maturity at 6 per cent. per annum, in instalments of eight dollars per month . . , payable on the 15th day of each month, until the above named sum, with interest, shall have been paid in full; said payments to be forwarded by postal money order, draft or registered letter, at my expense, to McArthur & Sons Co., waiving all valuation and appraisement laws of Ga. This contract is given for the conditional purchase of Harvard Style, No. 13507, the conditions of which are that the said piano

shall remain the property of McArthur & Sons Co. or its assigns, until this contract is paid in full; and at any time after default of payment of any of the instalments, or in case said piano is removed from the residence I now occupy, before the payment of this contract, without the written consent of McArthur & Sons Co., the said McArthur & Sons Co. may resume possession of and remove the said piano without being required to refund anything which may have been paid previously on it, and the said payment shall be retained by McArthur & Sons Co., or its assigns, as rent and liquidated damages. By mutual agreement between the bargainor and the bargainee, the sale of said instrument in case same is replevied is hereby waived. Loss in case of fire or other accident to be borne by the undersigned. And it is agreed, if this conditional contract is placed in the hands of an attorney at law for collection, or has to be sued on, that I will pay ten per cent. attorney's fees in addition to the principal and interest, which fees shall be added to and become part of the judgment. And it is further agreed that upon failure to make the payments as they become due, as stated above, the total amount of this conditional contract shall become due and payable. [Signed] Mrs. Sarah E. Andrews."

The plaintiff alleged that the bill of sale had been transferred to it for value received. It further alleged that $111 had been paid, and that nine instalments of $8 each were then due, and it elected, under the terms of the contract, to declare the full amount of the balance to be due, that is, $239, besides interest, and asked a general and special judgment. The defendant pleaded that the contract was not the property of the John Church Company, and that it can not legally sue on said contract. She further pleaded, that she had paid $123 and made all payments promptly, under the terms of the trade as made by her with the parties from whom she purchased the piano; that she was to pay said $350, not in money, but in board of employees of McArthur & Sons Company; that she purchased the piano upon that understanding, and that said terms of purchase were ratified by McArthur & Sons Company. On demurrer the court struck all of defendant's pleas except the one which set up that the contract was not the property of the John Church Company, and, after the introduction of the contract and the so-called transfer, directed a verdict for the plaintiff.

The question presented for our determination is, whether the court erred in restricting the case to this one issue, and, finally, in directing a verdict for the plaintiff.

The defendant's answer did not deny the execution of the instrument which was the foundation of the suit. And as the court could not legally allow the terms of the written instrument to be varied by the introduction of parol evidence in regard to the payment of the instalments by board instead of money, the plea of the defendant, which set up a parol contract totally at variance with that sued upon, which was in writing, was properly stricken. It appears that the court thereafter throughout the trial dealt with the case upon the assumption that the written contract of sale had been transferred and that all rights thereunder had been assigned to the bearer by McArthur & Sons Co., and that, for that reason, the John Church Company had the right, in its own name, to maintain an action upon it. If the trial judge had been right in supposing that the paper was really transferred, his subsequent rulings and his final disposition of the case would have been right; for all of the evidence offered by the defendant on the trial and rejected by the court tended to question the title of the plaintiff, the holder of the paper upon which suit was brought; and while a defendant can always inquire into the title of a holder of a contract on which he is being sued, if it be to his interest, still that title can not be inquired into unless it appears that the inquiry would in some way protect the defendant or let in a meritorious defense. If there had been a transfer of the instrument in question, the title of the holder could not properly have been inquired into; for, the payee having parted with all its title and interest in the contract by a written indorsement and physical delivery of the paper, a transfer or an indorsement would have carried with it the idea of negotiation; and the negotiated instrument, when payment therefor has been made to the holder, becomes functus officii. The original payee, having received value for his indorsement to the holder, has been satisfied, and his rights are at an end; and by payment to the holder she would be fully protected against any legitimate consequences or liabilities assumed by her in entering into the contract. If there had been a transfer (as the plaintiff admitted the execution of the contract and does not contend that she has not been allowed credit for all payments made thereon),

the trial judge would have been right in holding that the defendant was not hurt by the judgment, and that all of the evidence offered on the subject of title was immaterial. Had there been a transfer or an assignment in writing, as the learned judge supposed, this case would be practically identical with that of *Johnson* v. *Cobb,* 100 *Ga.* 139, and the ruling in that case would be applicable in this. But we think the learned trial judge was in error in admitting the contract in evidence over defendant's objection, and in holding that the entry thereon was either such assignment or indorsement of the instrument in question as could evidence title in the plaintiff or entitle it to maintain an action thereon. The so-called indorsement is in these words: "For value received, we hereby guarantee the payment of the within conditional purchase contract, and waive presentation, demand, protest, notice of nonpayment, and notice of protest." These words amount to nothing except to guarantee payment. They do not import any transfer of the title, either in the legal instrument, the contract, or the physical instrument therein described, and to which title is reserved by the vendor. Because they do not convey the title to the legal instrument, the plaintiff was not entitled to its general judgment; and for consequent failure of title in the musical instrument, the special judgment is out of tune. The objection of the defendant to the evidence, as certified in the bill of exceptions,—that the contract offered in evidence did not show title in the plaintiff, for the reason that the entry thereon was neither a transfer nor an indorsement,—was well taken, and should have been sustained.

We confess that during the oral argument of this case this court fell into the same error as did the learned trial judge, but after a more thorough investigation and mature consideration we have no hesitancy in holding that the written entry of the words quoted above on the contract submitted in evidence gave the plaintiff, the John Church Company, no right whatever to maintain this action. Counsel for defendant in error cites the case of *Vanzant* v. *Arnold,* 31 *Ga.* 212, and says that "an indorsement worded almost exactly as that involved in the case at bar was held to be not merely a guaranty, but such an indorsement as would render the indorsers liable as such." We see no similarity whatever in the case cited and the present case, except that there was a guarantee in the *Vanzant* case as well as a transfer of title. As there was a trans-

fer, the guaranty was immaterial. The words of the transfer in the *Vanzant* case were clear and explicit: "For value received *we assign the within notes* to Arnold, Johnson & Hamilton and to H. E. Diblee & Company, waiving demand and notice, and guarantee the payment of the same." While there was a guaranty, the case turned on the fact that there was a written assignment which operated to transfer title, and the guaranty of payment was considered by the Supreme Court merely as defining the liability of the indorsement, as expressed in the word "assign." This is evident from the language of the decision on this subject, as appears on page 212: "We think the defendants are indorsers. Their written engagement on the back of the note has the legal effect of an indorsement in Georgia of notes not payable or intended for negotiation in banks. That they stipulate therein to guarantee the payment of the notes does not the less make them indorsers under the act of 1826, . . for by it they have the right to define their liability; and thus may be guarantors, and yet indorsers, within the meaning and provisions of that act."

There is no question that a promissory note not containing any words of negotiability is so far negotiable by indorsement of the payee in blank as to pass the title to a bona fide holder and enable him to sue the maker in his own name. *Shelley* v. *Baker,* 125 *Ga.* 663. But this is not a case of indorsement in blank; because the very words used import a guarantee, and exclude the presumption of indorsement which arises where one signs his name across a contract. The cases *of Habersham* v. *Lehman,* 63 *Ga.* 383; *Heard* v. *DeLoach,* 105 *Ga.* 500; *National Bank* v. *Leonard,* 91 *Ga.* 805, as well as the *Shelley* case, above cited, are none of them applicable in this case; because they all deal with indorsements in blank. The decision in *Geiser Co.* v. *Jones,* 90 *Ga.* 309, is conclusive of the fact that the entry on the contract in this case is a mere guaranty. And while the words quoted by counsel for defendant in error,—"had the payee of these notes signed [such a] contract upon them with a third person, and . . afterwards negotiated them to such third person, [the payee] could, under our law, be sued and made answerable as indorser," appear in the opinion in that case, this point was not involved in the case, and the language quoted is in conflict with the rest of the decision, and is, therefore, clearly obiter dictum. On the contrary, words similar to those used on the contract now

under our consideration were there held to constitute the signers not indorsers but guarantors. "On each note was the following, without date, signed by Jones & Toole: 'For a consideration not herein named, we guarantee the payment of this claim to the Geiser Manufacturing Company." The case was dismissed as to Jones & Toole, and the plaintiff excepted. In rendering the opinion, Chief Justice Bleckley says: "Whether the present case falls within this exception [Civil Code, §5873] depends on the question whether Jones & Toole, declared against as indorsers, are such in fact, or whether the terms of their contract render them liable to the plaintiffs, not as indorsers, but as guarantors only. By its very nature a contract of indorsement can not be entered into with the payee of a promissory note as indorsee, but a contract of guaranty can be made with him as well as with any subsequent holder. Nor does the mere indorsement of a contract upon a note render the signer of the contract an indorser, within the legal and proper meaning of the term. It is true that in a physical sense he is an indorser by the mere position of his name on the paper; but we apprehend that the constitution intends by the term 'indorser' to refer to a person who has entered into a contract of indorsement as distinguished from contracts of a different class. . . A contract of indorsement is one of negotiation. Where there is no negotiation, either real or apparent, that is, either in substance or in form, there can be no such contract. . . Why should it not be held that the parties, one and all, contemplated the class of contract which the words they employed, naturally and fairly construed, import, to wit a contract of guaranty? This is the better and safer construction. Jones & Toole being guarantors, not indorsers, were exempt from suit in any county of the State, except in Troup where they resided." See also Trust Co. v. National Bank, 101 U. S. 68.                    *Judgment reversed.*