341. MASON *et al. v.* TERRELL, governor.

1. An indictment charging a violation of the act of 1903 (Acts 1903, p. 90), which fails to allege a contract of employment, charges no offense against the laws of this State, and is void.

(a) An executory contract without consideration is a nudum pactum. The law will not enforce a contract which is without consideration.

(b) A promise of another is consideration for a promise, but a contract is not created by a promise on the part of one to labor without any mutual concurrent obligation on the part of the other to pay for said services.

(c) An indictment which omits to charge that the failure of the defendant to perform his contract of labor, or to repay advances made to him, was without good and sufficient cause is fatally defective.

2. That the indictment is a nullity is a good defense to a proceeding to forfeit a criminal bond requiring the presence of the defendant to answer such indictment. Consequently it was error to direct a verdict in favor of the plaintiff in scire facias, where it appeared that the obligation was based upon an indictment fatally defective. The case is not altered by reason of the fact that the recognizance was entered into after indictment, instead of prior to the action by the grand jury.

3. The omission of the name of the county in which the court ·to which the principal of the bond is required to answer is held does not avoid the obligation, and the doubt or ambiguity, if any, is subject to explanation by parol evidence.

4. The recital in the scire facias that the defendant has been indicted for a misdemeanor is sufficient.

5. An affirmance of the judgment of the lower court will not result from the omission to cause to have transmitted a portion of the record material to a clear understanding of the errors complained of, if there be such an assignment of error as enables this court clearly to understand the errors complained of and to intelligently pass upon the same, either by reference to the bill of exceptions alone or to the bill of exceptions and the record together. If there be a plain assignment of error, duly certified by the judge, and any portion of the record material to a clear understanding of the error be not specified and transmitted, it would be the duty of this court, of its own motion, to order the clerk of the trial court to transmit such material portion.

Forfeiture of recognizance, from Morgan superior court—Judge Lewis.

Argued May 13, 1907.—Decided January 15, 1908.

*Hines & Vinson,* for plaintiffs in error.

*J. E. Pottle, solicitor-general, C. T. Crawford,* contra.

RUSSELL, J.   Anderson Hill prosecuted Charlie Mason, under the provisions of the act of 1903 (Acts 1903, p. 90), for cheating and swindling. Thereupon Anderson Hill became surety on an appearance bond of said Charlie Mason. Mason failed to appear

at the county court of Baldwin county as he was bound to do. And now Anderson Hill, the surety, excepts to the judgment of forfeiture, upon the ground that the indictment which Anderson Hill, the prosecutor, procured is totally defective, and the bond which Anderson Hill, the surety, signed, is void because Anderson Hill, the prosecutor, had not promised to pay Mason anything for the six months' labor which Mason promised to. perform before he fraudulently obtained $10 from Anderson Hill. In other words, it is insisted that, according to the allegations of the indictment, which Mason was bound to answer, Mason had agreed to . work six months for Anderson Hill, and had thereupon obtained from him $10, but Anderson Hill had never promised to pay Mason anything for his labor. The fact that the name of the prosecutor and that of the surety are identical is, no doubt, an incident without significance. While it seldom happens that two men in the same community, having the same surname, have exactly the same given name, still such a coincidence is not improbable. From the improbability that a citizen would feel it to be his duty to prosecute another for a crime before the grand jury, and then shortly afterwards fraudulently become surety for the appearance at court of the alleged criminal, or that a sheriff would become a party to such a transaction, it is to be presumed that Anderson Hill, the prosecutor, and Anderson Hill, the surety, are two distinct individuals. But for this presumption, we could not avoid the suspicion that the entire prosecution was but an attempt to use the processes of the criminal law for the selfish purpose of obtaining and retaining the services of Mason for nothing.

1. The indictment, however, is totally defective, and the surety has the right to plead this fact in the action brought by scire facias to obtain judgment absolute against him. To constitute a violation of the act of 1903, there must be a failure to perform a contract, or to repay an advance made on the faith of the contract. As held in *Wilson* v. *State, 124 Ga. 22,* and *Watson* v. *State,* 124 *Ga.* 454, there must not only be a contract, but it must be definite as to time, payment, and amount of payment. It must also appear that the defendant failed and refused to carry out the contract *without good and sufficient cause.* The indictment in this case sets forth no contract. The indictment is based on failure to perform a contract, but it fails to allege any considera-

tion whatsoever for the contract. The indictment charges Charlie Mason with "the offense of a misdemeanor, for that the said Charlie Mason . . did contract with one Anderson Hill to perform for him certain service, to wit, as a farm laborer, for six months, beginning January 1, 1905." This is all that is stated upon the subject of the contract; and it is clear that the alleged contract is without any consideration moving from Hill to Mason. Certainly it is not to be presumed that the farm laborer was to work for six months for $10; and yet, according to the allegations of the indictment, Hill did not undertake to pay any further sum. If the $10 was all that Mason was to receive, that fact should have been alleged; and in the absence of any allegation upon the subject, the indictment totally fails to allege any contract with reference to which the defendant entertained a fraudulent intent. "To constitute a valid contract, there must be parties able to contract; a consideration moving to the contract, the assent of the parties to the terms of the contract, and a subject-matter upon which it can operate." Civil Code, §3637. The so-called contract, referred to in the bill of indictment, is a mere nudum pactum and of no binding force. "A consideration is essential to a contract which the law will enforce." Civil Code, §3656. By §3661 of the Civil Code it is declared that "a promise of another is a good consideration for a promise." But a promise is not a good consideration for a promise unless there is absolute mutuality of the engagement, so that each party has the right to hold the other to a positive agreement; and the promises must be concurrent and obligatory upon each at the same time, in order to render either binding. 1 Parsons on Contracts, §449; 13 Ill. 140; 12 Barbour (N. Y.), 502; 18 Barb. 317; Clark on Contracts, 166; Story on Contracts, §569. It is alleged in the indictment that the defendant promised to work six months for the prosecutor, but it is not alleged that the prosecutor promised to do anything for the defendant. Among the essentials of a contract for work there must be (1) work to be done, (2) a price at which it is to be done, and (3) an agreement between the parties both as to work and price.

2. It is insisted by the learned solicitor-general that even if the indictment under discussion is fatally defective, the plaintiff in error ought not to prevail in this case, because the bond in question

was given upon a bench warrant, after indictment, and therefore with full knowledge on the part of the principal and the surety as to the character of the offense and the contents of the indictment. The solicitor-general, therefore, insists that the surety can not, after voluntarily executing the bond, claim non-liability upon the ground that the indictment already existing was defective. The exact question has not been passed upon in this State, though it has been held in *State* v. *Lockhart*, 24 *Ga*. 420, *State* v. *Woodley*, 25 *Ga*. 235, *McDaniel* v. *Campbell*, 78 *Ga*. 188, and *Candler* v. *Kirksey*, 113 *Ga*. 309, that it may be shown in defense of a proceeding to forfeit a criminal bond that the indictment is a nullity. In *Williams* v. *Candler*, 119 *Ga*. 179, it was held that the forfeiture of a criminal recognizance can not be successfully resisted by attack on the indictment returned against the principal, unless it appears that the indictment is void. This means, of course, that the indictment is so defective that a judgment thereon should be arrested on motion. The rule thus laid down in Georgia presents an exception to the holdings of most American jurisdictions. In 3 Am. & Eng. Enc. of Law, 713, it is stated, as being virtually universal, that a surety can not relieve himself of the obligation in his bond on account of any defect in the indictment, regardless of whether the bond was given before or after the indictment; and the statement is supported by citations from numerous authorities. It is insisted by State's counsel that in the *Lockhart*, *Woodley*, *Campbell*, and *Kirksey* cases the bond was given for the appearance of the defendant to respond to indictment if one should be found, and was not given upon a bench warrant after indictment. We do not see that this fact alters the case; and this seems to have been the view entertained by the Supreme Court in the *Williams* case; because, while the defense in that case was not sustained, the doctrine laid down in the cases just before cited,— that the fact that an indictment is a nullity is a good defense to a proceeding to forfeit a criminal bond,—was reaffirmed. In the *Williams* case the bond was given after the return of the indictment, just as in the present case. The opinion in the *Williams* case having been concurred in by a full bench, we see no reason for granting the request of State's counsel that these four decisions be certified to the Supreme Court for review. We fail to see why it makes any difference that the recognizance is entered into

with the knowledge that the indictment is so fatally defective as to be void. Unless a bond is given, a defendant must lie in jail. Shall he be deprived of his liberty and denied the privilege of giving bail simply because the charge against him does not constitute an offense under the laws of the State? To ask this question is, to our minds, to answer it. Neither the defendant nor the surety, no matter how the condition may have arisen, is responsible therefor; and it seems to us that there is really more reason why a defendant should be allowed his liberty upon giving bond where there is no charge against him than where there is a charge, good in form and substance. Nor is there any reason why the fact that the indictment is void should not be pleaded because the principal and the surety knew it was void when they entered into the obligation. To create an estoppel, some element of bad faith on the part of the party to be estopped should enter into the prior transaction which estops him, or some act at least from which the party sought to be estopped derives a benefit at the expense and to the injury of the opposite party. We can conceive of cases where one who procured a prosecution might be estopped from setting up, in his defense as surety on a bond, that the accusation procured by him was void; but even this is doubtful, because all prosecutions are presumed to proceed in the name and behalf of the State, regardless of the intervention of a prosecutor. Ordinarily, however, the prosecutor and the surety are entirely separate and distinct individuals; and it would be an unheard of hardship on defendants to be prohibited from making bail because of the fact that the charge lodged against them was void. This would be to say to the defendant and his surety: if the defendant stays in jail he can take advantage of the defense, but if he gives bond, he pays, as the price of his freedom until court, the penalty of waiving the defense to the indictment.

3. The plaintiff in error further insists that a verdict should not have been directed in favor of the plaintiff in the court below, because the bond is totally defective, for the reason that the caption of the bond is, "Georgia,————County," instead of Georgia, Baldwin County, and because the bond failed to allege at what county court and in what county he was required to appear. We hold this contention of the plaintiff in error to be untenable. The bond, as appears by the record, is attached to the same sheet,

of paper as the bench warrant. The defendant and his surety had the right to see the bench warrant, and are presumed to have seen it, before they signed the bond. They therefore knew at what county court the defendant was bound to appear. Furthermore, the evidence clearly showed that they did know; and parol evidence upon this subject was properly admitted by the judge. *Colquitt* v. *Bond,* 69 *Ga.* 352; *Sasser* v. *McDaniel,* 73 *Ga.* 548; *Kirkland* v. *Candler,* 114 *Ga.* 739; *Candler* v. *Kirkland,* 112 *Ga.* 460. Scire facias is the proceeding by which a criminal bond is forfeited. The bond itself is only useful for purposes of evidence; and no fact or circumstance going to show its validity or to explain any ambiguity, which does not alter or vary what is manifest in its terms as evidenced in writing, is admissible for the purpose of showing the liability of the obligors. The plaintiff in error insists that the omission is not an ambiguity, and that the effect of the evidence introduced over his objection was to alter and vary the terms of the written instrument. This position is inconsistent with the contention of plaintiff in error, that by reason of the omission the defendant could not tell at what county court he was bound to appear and answer a charge against him. If he was cognizant of the omission, he would naturally inquire at what county court he had to appear to answer; and in the absence of information the ambiguity would be very palpable.

4. The plaintiff in error further insists that the bond should not have been forfeited and judgment entered against him, because the bond required him to answer to an indictment for the offense of misdemeanor. The argument of counsel for plaintiff in error is that the word "misdemeanor" covers a multitude of crimes, being a general term for criminal offenses of any sort which do not in law amount to felony, and that if the defendant had been indicted for more than one offense and a bond had been entered into by a defendant and a surety, and the defendant did not appear, the State's attorney could not say in which case the bondsman was liable. This may be true. In *Rich* v. *Colquitt,* 61 *Ga.* 197, it was held that "a scire facias to forfeit a recognizance which recited that the principal had been indicted for the offense of misdemeanor, that he had given the recognizance for his appearance at the city court of Atlanta, to be held on April 16th, 1877, and that the bond had been duly forfeited, described the offense with

sufficient particularity." And to the same effect was the holding in *Vinson* v. *Northen,* 94 *Ga.* 698. Nothing more is held in *Nicholson* v. *State,* 2 *Ga.* 363, than that "It is essential to a re-cognizance for the appearance of the conusor to answer charges against him, that it show the cause of taking it." And this is explained in the body of the opinion by the citations. The decision is based upon the act contained in Prince's Digest, 179, declaring that "When any person shall enter into any recognizance or obligation for the appearance of another to answer any indictment, information or presentment of a grand jury *for any offense committed against the laws of this State,* and shall fail to produce the body," etc. Upon which Judge Lumpkin, delivering the opinion, says, that it is essential to the validity of the bond that it appear on the face of it that the party stands charged of some crime against the laws of Georgia. In the *Nicholson* case no prior proceeding to authorize a writ of scire facias appeared thereon. In the *Rich* case the Supreme Court, doubtless having the *Nicholson* case in mind and conforming to the ruling therein, that an offense must be charged against the laws of the State of Georgia, held: "The offense with which McCullough was charged, as recited and set forth in the scire facias, was that of a misdemeanor, and a misdemeanor is the violation of a public law. Code, §4262. The recital of that offense in the scire facias was sufficient to show that the defendant had been charged with an offense punishable by law, without stating the particular offense alleged in the indictment, which constituted a misdemeanor." In the present case the indictment was for a misdemeanor, the bond was for a misdemeanor, the scire facias alleged a misdemeanor. The indictment, the bench warrant, the rule nisi, each being alleged, showed the prior proceeding upon which the validity of the scire facias depended.

The case of *Simmons* v. *State,* 106 *Ga.* 358, cited by counsel, is not in point. The rulings in *Hampton* v. *Brown,* 32 *Ga.* 251, *Foote* v. *Gordon,* 87 *Ga.* 277, and *Vaughn* v. *Candler,* 113 *Ga.* 11, are conclusive of the proposition that the use of the word "misdemeanor," in the bond in this case, is sufficient, and that the use of this term without a more particular description of the offense does not render the bond either insufficient or void. "The description may be entirely general, provided that the offense de-

scribed be an indictible one." Bishop's New Criminal Procedure, §264, B (4). "The offense of which the accused stands charged must be stated in the recognizance with sufficient clearness to show of what offense he is in fact accused. But this need not be done with the technical accuracy required in an indictment." **3** Am. & Eng. Enc. of Law (2d ed.), 696, 698.

5. While no motion to dismiss the bill of exceptions is made, it is insisted by the solicitor-general, in his brief, that a judgment of affirmance should result because the bill of exceptions fails to specify the verdict as being material to a clear understanding of the errors complained of, and counsel insists that the verdict, even if sent up by the clerk, can not be considered by this court. The case of *Pyne* v. *State*, 113 *Ga.* 725, cited by the solicitor-general in his brief, as authority for his position, was expressly overruled in *Atlanta Land Co.* v. *Austin*, 122 *Ga.* 377. To dismiss the bill of exceptions would be clearly in the teeth of the Civil Code, §5569. Nor will an affirmance result. If it were material to have the verdict before us, it would be the duty of this court, under the provisions of the Civil Code, §5536, to have the clerk of the trial court to transmit a copy of the verdict to this court. As ruled by the court in *Andrews* v. *John Church Co.*, 1 *Ga. App.* 562, "under the Civil Code, §5569, the real question . . is whether or not there is such an assignment of error as will enable this court to know what are the specific grounds of complaint, and whether there is enough in the bill of exceptions alone, or in the bill of exceptions and the record taken together, to enable this court to pass upon the questions at issue." As stated in that case, "there is no difficulty in this case in determining either what errors are complained of, or whether the complaints are justified by law."

The verdict was not specified as material, nor does it appear in the record; but the judgment was specified and was accordingly sent up, and it purports to contain the verdict. Error is assigned upon the direction of a verdict in favor of the plaintiff; and the presiding judge certified that such a verdict was directed.

In view of what was said in the first division of this opinion, the amount of the verdict would be immaterial. The direction of any verdict in favor of the plaintiff was error.

*Judgment reversed.*