## 5472.  SINGLETON *v.* THE STATE.

1. The provisions of section 722 of the Penal Code, as to the sale of personal property by one holding it under a contract of conditional sale reserving title in the vendor, do not apply where the contract reserving title is void because in violation of the laws or public policy of the State.
2. Under the provisions of section 1893 of the Civil Code, a corporation can not be licensed as a peddler. And the fact that a corporation has paid the fee required by law does not authorize an employee, servant, or agent of the corporation, to peddle without personal compliance with the requirements of that section.

3. It being shown by the evidence that the sale of the personal property in question was made by a peddler, or itinerant trader, who had paid no license fee, and who had not complied with any of the requirements prescribed by law to entitle him to peddle, and that the conditional contract of sale alleged to have been violated by the defendant was prepared and proposed by this unauthorized person peddling in disregard of the express policy of this State and in open disobedience of the statute which penalizes all sales made by peddlers who have not complied with its requirements, the alleged sale was a nullity, and the defendant should have been acquitted. To vitalize and enforce a contract executed under conditions which the law does not sanction would defeat the policy of the State and prevent it from collecting revenues which it is justly entitled to receive.

4. The certiorari should have been sustained.

                    - Decided April 30, 1914.

Certiorari; from Fulton superior court—Judge Pendleton. November 2, 1913.

*Kemper & Weaver,* for plaintiff in error.

*Hugh M. Dorsey, solicitor-general, Lowry Arnold, solicitor,* contra.

Russell, C. J. Singleton was convicted of a violation of section 722 of the Penal Code, which declares that "When a person holds personal property under a conditional purchase and sale, and by the terms of the purchase the title is retained by the vendor until the purchase-price is paid, he shall not, without the consent or approval of the vendor, sell or encumber the property with intent to defraud the vendor or defeat his rights, or when such selling or encumbering the property tends to the injury of the vendor. A violation of this section shall be a misdemeanor." He sued out certiorari, and he excepts to the judgment overruling the certiorari. There was evidence in behalf of the prosecution that the watch which the accused had purchased under the written contract reserving title in the vendor was sold by him to a third person, but there was evidence to the effect that instead of selling it, he merely deposited it as a pledge to secure an indebtedness for money advanced. Upon the issue as to the bona fides of the defendant in the transaction, a verdict either way would have been supported; but in the view that we take of the case, this is immaterial. The prime question raised in the court below, and now presented for our consideration, is whether the evidence established the existence of a subsisting, valid, legal contract, for the violation of which the defendant could be subjected to the penalties imposed by section 722

of the Penal Code. Under the provisions of that section it is as indispensable to show that there was a written contract authorizing the vendor to retain the title as it is to prove any other ingredient of the offense. In fact, proof of the contract is the basis upon which the prosecution is compelled to rest. If the vendor does not retain the title, it passes by delivery to the purchaser of the chattel, and no law prohibits his disposing of the property as he may see fit. The provisions of this section of the Penal Code were especially designed for the purpose of protecting the rights of the vendor in all instances where, by contract, his purchase-money is secured by reservation of the title; and if he has taken such a contract, the sale or incumbering of the property mentioned in the contract, without his consent, and with intent to defraud him, subjects the vendee to prosecution. There can be no reservation of title without the contract; there can be no prosecution for disposing of the property unless the title has been legally retained; and hence, no contract, no conviction. One of the essential requisites to the making of a contract is that the parties shall be capable of contracting. If either party to the proposed contract is by law wholly incapable of contracting, the effort to contract is generally an absolute nullity. In some instances one who at the time of the execution of the writing is incapable may adopt the contract at the termination of his disability; but one whom the law declares to be incapable of executing a contract can not make a valid, legal contract; nor can a contract be valid when made by one whom the law has forbidden to make it and subjects to punishment if it is made upon terms other than those prescribed by law.

The record in the present case discloses that the circumstances surrounding the execution of the purported contract are not in dispute. The accused was on Peters street, in the city of Atlanta, one Saturday night. He was accosted by another negro, who asked him if he did not want to buy a watch. He was taken by this negro a short distance up the street, and presented to one W. L. Manning, who testifies that it was dark, but that the street lights were burning; that he (Manning) had several watches with him to be sold for Jones & Phillips, a corporation in the jewelry business; that a colored boy brought the defendant to him, and that he sold to the defendant a watch on the street, and took him into a beer saloon, where the defendant signed the printed contract of conditional sale.

The purchaser paid $2 down at the time. Manning testified that he "did not do anything particularly" after selling the watch to the defendant. He did not read the contract to the defendant, and did not know whether the defendant knew what he was signing or not. "I took him in a saloon." "I just told him to come with me and sign it." There was proof from a witness for the State that the defendant made a few other payments, of $1 each, upon the watch, and also proof that before paying the purchase-price in full the defendant sold the watch to one Will Bostwick. Manning testified that he had paid no special tax as a jewelry peddler, and had not registered in the office of the ordinary of Fulton county; but he testified that the corporation for which he was selling watches upon the streets had paid the license. He was the only witness who testified on this point.

Under the foregoing testimony the conviction of the accused was not authorized by law. Clearly Manning was a peddler at the time of the sale of the watch and of the execution of the conditional contract of sale, upon the validity of which the success of the prosecution depended. According to his own statement he was carrying with him a number of watches, for the purpose of selling them upon the streets, and it is plain that the transaction under review was only one of many similar transactions of daily occurrence.

A peddler is one who goes from place to place exhibiting his wares and actually selling them whenever he finds the opportunity. *Kimmell* v. *Americus,* 105 *Ga.* 694 (31 S. E. 623). "The leading primary idea of a hawker or peddler is that of an itinerant or traveling trader who carries goods about in order to sell them, and who actually sells them to purchasers, in contradistinction to a trader who has goods for sale and sells them in a fixed place of business." *Gould* v. *Atlanta,* 55 *Ga.* 689, quoting from Shaw, C. J., in Commonwealth *v.* Ober, 12 Cush. 195. For other definitions see *Wrought Iron Range Co.* v. *Johnson,* 84 *Ga.* 754 (11 S. E. 233, 8 L. R. A. 273) ; *Ezell* v. *Thrasher,* 76 *Ga.* 817 (30 S. E. 755) ; *Duncan* v. *State,* 105 *Ga.* 457 (30 S. E. 755) ; *McClelland* v. *Marietta,* 96 *Ga.* 749 (22 S. E. 329). In *Wrought Iron Range Co.* v. *Johnson,* supra, it was held that one whose vocation is to go from place to place with a sample stove, for the purpose of exhibition and to procure orders, though the orders are afterwards filled by his employers, and the stoves thus ordered are delivered by other agents,

is a peddler. But it is not necessary for us to place our decision upon the rulings in these two cases, for in the case sub judice the entire transaction, including delivery of the article purchased, was completed upon the spot. Black's Law Dictionary defines "peddlers" as "itinerant traders; persons who sell small wares which they carry with them in traveling about from place to place. Persons, except those peddling newspapers, Bibles, or religious tracts, who sell or offer to sell, at retail, goods, wares, or other commodities, traveling from place to place in the street, or through different parts of the country." In perhaps the latest adjudication of the Supreme Court in which the term "peddler" is defined (*Smith* v. *Whidden*, 138 *Ga.* 471, 75 S. E. 635), the court held any one to be a peddler, and subject to the provisions of section 946 of the Civil Code, who traveled as a hawker or vendor of patent medicines; and such a salesman was held to be a peddler although he was not the owner or proprietor of the goods sold, or of the animals and vehicles by which the articles were transported from place to place, and though he was acting only as agent of one who by law was authorized to peddle without obtaining a license for the privilege of so doing. In *Whiddon's* case the Supreme Court not only held that the person who actually passes from place to place, for the purpose of trading, by sample or otherwise, is a peddler (and this classifies Manning, who was the salesman in the case at bar), but also ruled that he who peddles must himself obtain a license to peddle, and can not trade or travel under the license issued to another. The prosecuting witness, Manning, had no place of business on Peters street. He claimed to be employed by Jones & Phillips, a corporation, but the place of business of the corporation, as testified, was on Marietta street. He had obtained no license, and could not peddle under a license granted to Jones & Phillips, even if a license could legally have been issued to that corporation. A license could not be issued to the corporation. The Civil Code, § 1892, provides as follows: "Every peddler shall furnish said ordinary with evidence of his good character, and shall take and subscribe before him this oath: 'I swear that I will use this license in no other county than the one for which it is granted, nor suffer any person to use it in my name, and that I am a citizen of this State. So help me God.' Said oath and license must be entered in the book kept for that purpose, and the license must contain a description of the person

of the peddler." A corporation, as such, can not take an oath. The prescribed oath exacts a promise that the license shall not be used by any other person in the name of the person to whom it is issued; and thus a corporation could not use the license without violating the promise. The code requires the ordinary to insert in the license a description of the person of the peddler. This would be rather difficult in the case of a corporation, since it is so artificial as to be without physical form or substance. And it requires the ordinary to be satisfied of the good character of the proposed peddler; and this must be assumed to be impossible in the case of a corporation, which, being commonly deemed to be soulless, can not be said to be possessed intrinsically of character, either good or bad, in the broad sense in which that term is usually applied to individuals. And so it is utterly immaterial in this case whether Jones & Phillips, a corporation, had paid the license tax, or not. The corporation could not legally have been licensed or registered. The provisions of the code are extremely wise, because to permit a corporation in a populous city to comply with the law by paying for a single license, which might be used by an hundred agents, would certainly render absolutely valueless the measure adopted by the State as a means of collecting revenue to which it is justly entitled. When Manning bargained the watch to the defendant and attempted to consummate the transaction by a conditional contract of sale as an agent of Jones & Phillips, he was acting as a peddler without a license. If he could legally enter into such contract, the conviction of the defendant could be supported by other evidence in the case. If he could not, either as principal or agent, enter into the contract, and on the contrary was expressly forbidden so to do at the time he attempted to make the contract, then the defendant had no one to contract with, and the contract was void on that account, as well as for the reason that it was a contract made in express violation of the law, and contrary to the principles of sound public policy which must be maintained in order to enable the State to collect its revenues; and the defendant could not legally be convicted. The case at bar rests practically upon the principle announced in *Glenn* v. *State,* 123 *Ga.* 587 (51 S. E. 605), in *McCoy* v. *State,* 124 *Ga.* 218 (52 S. E. 434), and in other cases, involving what is generally known as the "labor-contract act" of 1903 (section 715 of the Penal Code), that a valid contract must exist to authorize a con-

viction, and that a contract not civilly enforceable can not be the foundation of a criminal prosecution. *Brooks* v. *State*, 12 *Ga. App.* 104 (76 S. E. 765).

We hold that, under the provisions of section 722 of the Penal Code, if the contract of conditional sale is for any reason void, a criminal prosecution based on it can not be maintained. Manning, as agent for Jones & Phillips, must be regarded as one of the two parties necessary to enter into a mutual agreement; else no contract could have ensued. We think it is clear that Manning was legally incapable of making a contract, by reason of the provisions of the code to which we have referred; but this is not all. Section 631 of the Penal Code provides that "If any peddler, or itinerant trader, shall sell any goods, wares, or merchandise, except such as are excepted by law, without a license from the proper authority, he shall be guilty of a misdemeanor." Jewelry and watches are not excepted by law. On the contrary, section 946 of the Civil Code expressly requires peddlers of jewelry to pay $50 in each county where the same is peddled, sold, or offered for sale. The execution of the written contract was but the final culmination and consummation of the peddling, each detail of which had been penalized by law. There was no contract of conditional sale, because the law will not enforce civilly a contract made in disobedience of law; nor will it allow a criminal prosecution to rest upon such a contract as a foundation. Upon this point see the rulings of this court in *Ford* v. *Pruett*, 11 *Ga. App.* 359 (75 S. E. 269); *Horsley* v. *Woodley*, 12 *Ga. App.* 456 (78 S. E. 260); *Grantham* v. *Fleming*, 13 *Ga. App.* 433 (78 S. E. 1113); and of the Supreme Court in *Murray* v. *Williams*, 121 *Ga.* 63 (48 S. E. 686). One can not defraud the State of its rightful due and then recover by law profit accruing from the transaction in which he had no right to engage. *Jalonick* v. *Greene County Oil Co.*, 7 *Ga. App.* 309 (66 S. E. 815).

As to the effect of the invalidity of the contract upon a criminal prosecution depending upon the contract, see *Cody* v. *State*, 69 *Ga.* 743; *Mason* v. *Terrell*, 3 *Ga. App.* 348 (60 S. E. 4); *Starling* v. *State*, 5 *Ga. App.* 171 (62 S. E. 993); *Watson* v. *State*, 124 *Ga.* 454 (52 S. E. 751); *Presley* v. *State*, 124 *Ga.* 446 (52 S. E. 750); *Bendross* v. *State*, 5 *Ga. App.* 175 (62 S. E. 728). In the last-named case it was held that a contract made on Sunday, being void,

will not support a conviction under the provisions of the act of August 15, 1903, now section 715 of the Penal Code. In the present case the contract is void by reason of the disobedience of a law enacted by the same authority as the Sunday law, and prescribing likewise a misdemeanor punishment for its violation,—a law which rendered one of the contracting parties incapable of contracting, and thereby nullified the attempt to contract.

The court erred in refusing to sustain the certiorari upon the exception that the verdict was contrary to the evidence; and it is unnecessary to refer to any of the other assignments of error.

*Judgment reversed. Roan, J., absent.*