## GLENN v. THE STATE.

The evidence being insufficient to support the verdict, the trial judge erred in not granting a new trial.

Submitted July 10, — Decided August 2, 1905.

Accusation of misdemeanor. Before Judge Humphreys. City court of Moultrie. June 14, 1905.

*J. D. McKenzie* and *J. A. Wilkes,* for plaintiff in error.

*T. W. Mattox, solicitor,* and *L. T. Johnson,* and *James Humphreys,* contra.

Fish, P. J. The accused was tried and convicted, in the city court of Moultrie, upon an accusation charging him with a violation of the statute of August 15, 1903, which is entitled, "An act to make it illegal for any person to procure money, or other thing of value, on a contract to perform services, with intent to defraud; and to fix the punishment therefor, and for other purposes." The accusation charged that he contracted with the firm of Pinson & Woolard, a firm composed of T. J. Pinson and H. D. Woolard, to perform services as a laborer for said firm, and by

reason of such contract did obtain advances from the firm in the sum of $103 in money, and, after having so contracted and procured said money, did fail to comply with said contract or to return to Pinson & Woolard such money with interest, to the loss and damage of Pinson & Woolard in the sum of $103, the contract having been made by the accused with intent then and there to procure such money from Pinson & Woolard and not comply with said contract. He made a motion for a new trial, upon the general grounds and others, which was overruled, and he excepted.

In our opinion, the trial judge erred in overruling the motion, as the evidence was not sufficient to authorize a conviction. The accused was convicted upon the testimony of H. D. Woolard, who testified that he was a member of the firm of Pinson & Woolard, and, acting for such firm, had purchased certain property, which it appears from his evidence was a turpentine farm, from a man named Parrish. Woolard testified: "At the time I looked over the property I found that a number of Mr. Parrish's hands were in debt to Parrish, and I went and saw each hand before I would buy out the still, boxes, timber, etc. The defendant in this case owed Mr. Parrish an account of $89.00, and he wanted me to pay Mr. Parrish for him, and he contracted with my firm, Pinson & Woolard, to work for us if we would pay the account to Mr. Parrish; but we would not agree to do that until we saw the hands each individually about his account, and then we bought out Mr. Parrish, after the hands had agreed to work out their accounts with us. I specially remember going to Archie Glenn, the defendant in this case, and having a talk with him about his account, which was eighty-nine dollars and some cents. The defendant said he would work it out with our firm if I paid the account to Mr. Parrish; and I thereupon paid the account to Mr. Parrish of eighty-nine dollars and some cents, and the defendant went to work for us as a wagoner at and for the sum of twenty dollars per month. I am not positive when he went to work, but I made this trade some time the early part of November last, and to the best of my recollection the defendant went to work for us some time in November last, about the 10th day of November, and continued to work for us up to the second day of May, 1905." The witness further testified that the accused, at different

times, while he was working for Pinson & Woolard, got different amounts of money from such firm, and that when he left the employment of such firm he owed it the sum of $103, and had "since then failed and refused to return and carry out contract or to return to us said advances with interest;" and that the $103 that the accused still owed Pinson & Woolard "was obtained from us all along at different times under contract to work with us as a laborer." As we have said, this evidence was not sufficient to authorize a conviction. The statute in question, being criminal, must be strictly construed. The first section of the act provides, that "if any person shall contract with another to perform for him services of any kind with intent to procure money or other thing of value thereby, and not to perform the service contracted for, to the loss and damage of the hirer; or, after having so contracted, shall procure from the hirer money, or other thing of value, with intent not to perform such service, to the loss and and damage of the hirer, he shall be deemed a common cheat and swindler, and upon conviction shall be punished as prescribed in section 1039 of the Code." The second section provides, "That satisfactory proof of the contract, the procuring thereon of money or other thing of value, the failure to perform the services so contracted for, or failure to return the money so advanced, with interest thereon, at the time said labor was to be performed, without good and sufficient cause, and loss or damage to the hirer, shall be deemed presumptive evidence of the intent referred to in the preceding section." Acts 1903, p. 90.

Before one can be lawfully convicted of a violation of this statute, several things, essential to constitute the offense defined, must be shown. Among them is, that there was a distinct and definite contract for service; and another is, that the person contracting to perform this service has, without good and sufficient cause, failed and refused to carry out his contract by performing the service. An implied contract will not do, but there must be an express contract, clear and definite in its terms. The only contract between Pinson & Woolard and the accused which the evidence discloses is, that Pinson & Woolard were to pay for the accused a debt of eighty-nine dollars and some cents which he owed to Parrish, and the accused was to work for Pinson & Woolard, at and for twenty dollars per month, until he worked

out this debt. He did not contract with them that he would work for them at twenty dollars per month until he worked out this debt and in addition thereto whatever other advances they might make to him in the future. Whether a contract so indefinite and uncertain as to its duration would fall within the provisions of this criminal statute is a question which does not arise in this case. The only contract disclosed by the evidence being one by which the accused agreed to work for the prosecutor's firm at twenty dollars per month, until he worked out the sum of eighty-nine dollars and some cents, which he, upon the faith of this agreement, procured them to pay for him, and the evidence showing that he remained in the service of such firm much longer than was necessary to comply with this contract, his conviction can not be sustained. He did not violate *this* contract when he quit the service of Pinson & Woolard at the time he did. Although Pinson & Woolard let the accused have various sums of money during the time that he was working for them, and he failed to pay the debts thus created, this did not authorize his conviction. The theory that he procured these advances with intent not to perform the services covered by the only contract which was proved is utterly untenable, as the evidence shows that he did perform such services. Of course, the mere statement of the witness Woolard, that the $103 which the accused still owed Pinson & Woolard " was obtained from us all along at different times under contract to work with us as a laborer," amounted to no more than a statement of his own conclusion, as his evidence disclosed no contract except the one above indicated.

*Judgment reversed. All the Justices concur, except Simmons, C. J., absent.*