## 4981. JOHNSON *v.* THE STATE.

1. An intent to defraud, coexistent with the making of the contract, is an essential element of the offense of cheating and swindling, as denounced in section 715 of the Penal Code. Under the provisions of section 716 of the Penal Code, failure to perform services contracted for and failure to return money advanced upon a contract of service, without good and sufficient cause, may afford presumptive evidence that the fraudulent intent existed at the time the contract was made, but either the performance of the services or the repayment of the advancement is a complete defense; and upon the trial of one charged with a violation of section 715 it is incumbent upon the prosecution to prove not only that the services as contracted for were not performed, but also that the advances, with interest thereon, had not been repaid at or before the time fixed for the commencement of the service.

2. Where one is charged with cheating and swindling in violation of section 715 of the Penal Code, the burden of showing that the accused had no good cause or excuse for his failure to perform his contract or to repay the advancement is not upon the defendant, as matter of defense, but the burden rests upon the prosecution to prove those facts which are by the statute declared to be necessary to raise the presumption of the intent to defraud, which is so essential an ingredient of the offense that a conviction can not be supported where such an intent is not proved beyond a reasonable doubt. Proof that the accused failed to perform the services contracted for or to repay the advance which supplied the consideration of the contract would be rebutted by the general presumption of the defendant's innocence; because the existence of a fraudulent intent at the time the advances were made and the contract was entered into must be proved; and, without further proof, the question as to what was the real intention of the defendant at the time of making the contract would, to say the least of it, be an open one. Indeed, the well-established rule that where an act is equally subject to two constructions, one indicative of the guilt of the actor and the other consistent with his innocence, the latter must be adopted, would prevail.

3. It is uncontradicted that the failure of the accused to comply with his contract and to labor for the prosecutor was due to the fact that he was already under contract of service with another employer; and the testimony that the defendant immediately endeavored to get his employer to repay the money advanced by the prosecutor, and that payment was promised but postponed by this employer, is undisputed. The State failed to show that the accused had no good cause or excuse for failing to pay the advancement; and even if the testimony in behalf of the defendant upon this point should have been discredited, the conviction of the defendant was not authorized. The fact that the defendant made an affidavit which it was alleged was attached to the contract, to the effect that he was not under any other contract of service at the time of the advancement made for him by the prosecutor, might subject him to prosecution for false swearing, or to a prosecution for cheating and swindling by artful means and deceitful practices, under the provisions of section 719 of the Penal Code, but proof of the

making of this affidavit is not a sufficient substitute for proof that the subsequent failure to perform the contract or repay the advancement was without good cause as required by law.

DECIDED OCTOBER 7, 1913.

Accusation of cheating and swindling; from city court of Dublin .—Judge Hicks. May 13, 1913.

*Burch & Burch, J. G. Howard,* for plaintiff in error.

*George B. Davis, solicitor,* contra.

RUSSELL, J. The defendant was convicted of a violation of section 715 of the Penal Code. His motion for a new trial was overruled. It appears from the record that he was in the employ of one Burch, as a cropper or farm laborer upon Burch's farm. He was indebted to a mercantile establishment in Dublin, known as the "Four Seasons," of which a Mr. Arnau was manager. To secure the payment of this indebtedness he executed a mortgage on a certain cow and on his crop then growing. Upon his failure to pay this debt, and the failure of the levying officer·to find property upon which to levy, the defendant was arrested and placed in jail. At the jail he was visited by Mr. Carter (the prosecutor) and Mr. Carter's son, and after some conversation he was taken, at the instance of Mr. Arnau, to the office of the solicitor of the city court (who was also Mr. Carter's personal attorney). There the younger Mr. Carter, as agent for his father, negotiated with the defendant and agreed to pay the defendant's indebtedness to the "Four Seasons," upon the payment of which the defendant was to be discharged from jail; and thereupon Mr. Davis, the attorney, prepared a contract, by the terms of which the defendant agreed to work for six months for Mr. Carter, in consideration of the advance of $31. The record does not show whether the warrant sworn out upon the mortgage of the "Four Seasons" was dismissed or not, but the defendant was discharged from jail upon his promise to return in a day or two and enter upon his service of employment with Mr. Carter. Mr. Davis testified: "This negro asked Mr. Carter to let him go down to Cadwell and get him some clothing, and said he would meet him back here Monday morning. I added an oath to the contract, where he swore he was not under contract with any one else." When the defendant reached Mr. Burch's, to get his clothes, according to the undisputed testimony of Mr. Burch, he told Mr. Burch that he owed Mr. Carter. Mr. Burch

testified: "I told him that I would pay it whenever he worked enough." The defendant had traded with Mr. Burch to make a crop, and the payment was made by Mr. Carter before the expiration of the defendant's contract with Mr. Burch. The State proved the contract substantially as set forth in the accusation, and that loss and damage had accrued to the prosecutor as alleged; that no service had been performed under the contract, nor had the money advanced been tendered to be repaid. There was no evidence tending to show why the defendant did not perform his contract, other than that offered by himself in the testimony of Mr. Burch, nor did the State establish that the failure of the accused to repay the advance was without cause. The evidence of Mr. Burch, to the effect that at the time Mr. Carter advanced the $31 the defendant was bound by a subsisting contract of employment to himself, was undisputed, as is the fact that as soon as the defendant could get to Mr. Burch's after his release from jail, he endeavored to induce Mr. Burch to repay Mr. Carter the advancement made by the latter, and that his failure to comply with his contract was due to the fact that Mr. Burch would not consent for him to leave. Furthermore, Mr. Burch had promised the defendant that he would repay the advancement when he made his crop.

The single question in the case is whether the proof of fraudulent intent on the part of the defendant at the time he procured the advance is sufficient to comply with the requirements of section 715 of the Penal Code, under which the defendant stood charged. It is not necessary to refer to those portions of the record in which the testimony is in conflict. We consider the judgment of the trial judge as based upon the superior credibility of the testimony in behalf of the State, which he was authorized, in his discretion, to attribute to it. We disregard the contention that the contract was induced by duress, and the further insistence that the payment to the "Four Seasons" was the act of Mr. Carter, and not the free and voluntary act of the defendant,—in other words, that the advancement was suggested by the prosecutor, instead of being solicited and requested by the accused. We consider the case upon the theory, evidently adopted by the trial judge, that the defendant, being desirous of being released from jail, promised the would-be employer that if he would advance for him a certain sum of money, to pay a debt in which the prospective employer had no interest,

he would perform certain services for the employer, for a fixed and definite time, and that thereafter he failed to perform these services or to refund the money thus advanced. For reasons which will be hereafter stated, the fact that at the time of making the contract the defendant took an oath that he was not under contract with any one else is, in our opinion, insufficient of itself to evidence the existence of a fraudulent intent as defined in section 715 of the Penal Code. But even if we are mistaken as to this, the testimony as to the affidavit should not have been considered by the trial court, because it was purely opinionative, and no sufficient facts were presented to the court upon which it could be adjudged that the defendant was actually sworn, or made a statement upon oath, conscious that he was bound by its obligations. To say that one "took an affidavit" assumes, without giving the court an opportunity of passing upon the question, that the alleged affiant was fully apprised of the contents of the purported affidavit, and that he consciously and voluntarily assumed the obligation of a lawful oath, administered by one lawfully authorized to administer oaths. The trial judge did not have before him any information, so far as appears from the record, which would enable him to say who administered the oath, whether the oath was a lawful oath, or whether the affiant was conscious that an oath was being administered, or was apprised of the contents of the affidavit to which he was being sworn; so that clearly there is nothing more in the record upon the subject of the affidavit than the mere conclusion of the witness who testified upon that point. Mr. Carter, on cross-examination, testified, as to the contract to which the oath was attached, that although he had searched for it, he would not swear that it was lost.

Omitting consideration of the affidavit for the present, therefore, the question arises as to whether, on the trial of one charged with a violation of the labor-contract law of 1903 (embodied in sections 715 and 716 of the Penal Code), mere proof that he failed to comply with his contract, or to repay the money advanced to him, can be held to be presumptive evidence of the coexistent fraudulent intent essential to authorize conviction in such a case, without thereby giving to the act a construction which would render it repugnant to the provision of the constitution which prohibits imprisonment for debt. Of course, this law, like all other criminal statutes, must be strictly construed. Hence, in *Glenn* v. *State,* 123

*Ga.* 585 (51 S. E. 605), it was held (and this ruling has been uniformly followed since by the Supreme Court and by this court), that there must be a distinct and definite contract of service, and that the person contracting to perform the service refused, without good and sufficient cause, to carry out his contract. In *Patterson* v. *State,* 1 *Ga. App.* 782 (58 S. E. 284), we held that "the paramount, controlling, ever-essential element of the offense, which must be proved to have been coexistent with the debt or contract, is the intent to defraud." All the decisions of the Supreme Court bearing upon this question place upon the State the burden of proof as to whether the defendant had good cause for failing or refusing to carry out his contract; necessarily so, because the statute itself declares that "satisfactory proof of the contract, the procuring thereon of money or other thing of value, failure to perform the services so contracted for, or failure to return the money so advanced, with interest thereon, at the time said labor was to be performed, *without good and sufficient cause,*" etc., shall be deemed presumptive evidence of the fraudulent intent referred to in the preceding section. Where it appears that failure to perform the contract was the result of sufficient cause, an acquittal necessarily results; but this is not all. Proof of absence of sufficient cause is essential to support a conviction; for without this proof the existence of the antecedent or coexistent intent to defraud is not established. To maintain the "labor-contract act" of 1903 as a constitutional enactment and enforce its provisions, it must be given such a construction as will prevent it from being, or even appearing to be, a criminal process to be used for the collection of debts.

From the testimony in the record, it is plain that the State did not establish that this defendant had no good cause for failing to comply with his contract. According to the defendant's evidence, he could only comply with this contract by violating a pre-existing contract of the same nature. The State's testimony did not offer any reason why the defendant violated his contract. Upon the trial of one accused of a violation of section 715 of the Penal Code the State must show that the accused did not have any good reason for failing to comply with his contract or for failing to repay the money. As it does not appear, from the evidence, that the accused had no good reason for not complying with his contract, or for failing to repay the money, he can not be convicted.

*Judgment reversed.*