### 5914.  LEWIS, *alias* JACKSON, *v.* THE STATE.

1. Where one contracts to work as a farm laborer for another for a period of six months, from a day named to another day named, at a fixed number of dollars per month, on a farm "tended" by the employer, "on lands owned by" another person named, in a named county of the State of Georgia, not only is the place where the contract is to be performed

sufficiently indicated for all purposes, but the contract is sufficiently certain and definite as a whole to support a prosecution under the "labor-contract act" (Penal Code, §§ 715-716).

2. The presumption of an intent to defraud, arising under the "labor-contract act" (Penal Code § 716), is not rebutted by proof that the defendant agreed, at some time after his breach of the contract and after the time the labor was to be performed, to return the money advanced by the employer.

3. In a prosecution under the "labor-contract act," supra, the burden is upon the State to show that there was loss or damage to the hirer. If there has been part performance of the contract, by labor for a certain number of days, loss and damage to the hirer is shown, where it appears that the amount or value advanced was in excess of what would be due for the labor for that time at the rate per month stipulated in the contract.

4. In a prosecution for a violation of the "labor-contract act," supra, the State, to complete its presumptive case, must show that there was no good reason why the contract was not performed, or no good reason why the accused did not return the money advanced to him. Without this proof the case for the State is incomplete, because the prosecution has failed to create the evidentiary presumption necessary to rebut the presumption of innocence.

DECIDED NOVEMBER 17, 1914.

Accusation of cheating and swindling; from city court of Irwin county—Judge Newbern. July 21, 1914.

*McDonald & Grantham, Rogers & Rogers,* for plaintiff in error.
*H. J. Quincey, solicitor,* contra.

WADE, J. An accusation under the "labor-contract act" (Penal Code, §§ 715-16) was preferred in the city court of Irwin county against Jack Lewis, alias Lewis Jackson, setting out that on January 28, 1914, in that county, the defendant "unlawfully and with force and arms, after having contracted with Alfred Mix to perform for him, the said Alfred Mix, certain services, to wit, to work as a farm laborer upon the farm tended by said Alfred Mix on lands owned by G. W. Lewis, in Irwin county, Georgia, for a period of six months, beginning on the first of February, 1914, and ending on the first day of August, 1914, and for the price of fifteen dollars per month and board, which said price the said Alfred Mix agreed to pay, and after so contracting the said Jack Lewis, alias Lewis Jackson, with intent not to perform the said services so contracted to be performed, did procure upon the strength of said contract, from said Alfred Mix, the sum of $31.63 in money, and without good and sufficient cause did fail and refuse said services so contracted to be performed, and did fail and refuse to repay to said

Alfred Mix the money so advanced, to the loss and damage of him the said Alfred Mix, in the sum of $31.63; contrary to the laws of the State," etc. The accusation was demurred to on the grounds, that it did not set forth the contract with sufficient definiteness to put the defendant on notice; that it failed to state the amount of services to be rendered by the defendant on the farm of Alfred Mix; that it did not locate the farm of Alfred Mix, rented from G. W. Lewis, nor describe the farm with such definiteness as to put the defendant on notice of what farm of Alfred Mix was meant; that the contract set forth in the accusation was too vague and indefinite to be the basis of a criminal prosecution; and that the accusation did not describe the work or kind of work to be performed, and did not charge an intent to defraud Alfred Mix at the time of making the contract. The demurrer was overruled, and the case proceeded to trial and resulted in a verdict of guilty. A motion for a new trial, based on the usual general grounds and on various special grounds, was overruled, and the defendant excepted.

Before one can be lawfully convicted of a violation of the "labor-contract act," supra, it is necessary to show a contract distinct and definite as to when the term of service was to begin and end, and all other necessary particulars (*Wilson* v. *State,* 124 *Ga.* 22, 52 S. E. 82; *Presley* v. *State,* 124 *Ga.* 446, 52 S. E. 750; *Watson* v. *State,* 124 *Ga.* 454, 52 S. E. 751), and that the defendant, without good and sufficient cause, failed and refused to carry out his contract by performing the service. An implied contract will not suffice to sustain a conviction, but there must be an express contract, clear and definite in its terms. *Sanders* v. *State,* 7 *Ga. App.* 46 (65 S. E. 1071). The contract must have been made with intent to procure money or other thing of value thereby, and not to perform the service contracted for, and it must appear that loss and damage resulted to the hirer; or it must appear that after having contracted to perform services of any kind for another, the person so contracting procured from the hirer money or other thing of value with the intent not to perform such service, to the loss and damage of the hirer. *Glenn* v. *State,* 123 *Ga.* 585 (51 S. E. 605). The intent to procure money or other thing of value, and not to perform the service contracted for, must be inferable from the facts and circumstances of the case, before the jury would be authorized to convict; but this intent need not be explicitly declared; it may be

deduced by the jury from the conduct of the accused, or from circumstances of the particular case. Failure to perform the service or to return the money obtained from the hirer is presumptive evidence of an intent to defraud, when it appears there was no good and sufficient cause why the contract was not performed. "To complete its presumptive case, the State must show that there was no good reason why the contract was not performed, or, in default thereof, that there was no good reason why the accused did not return the money advanced to him." *Thorn* v. *State,* 13 *Ga. App.* 10-13 (78 S. E. 853).

Where it is alleged that the labor was to be performed upon the farm of another, the particular farm must be so located and identified in the accusation or indictment as to put the defendant on notice of the precise charge against him; but where the accusation charges that the defendant contracted to work as a farm laborer "upon the farm tended by said Alfred Mix, on lands owned by G. W. Lewis, in Irwin county, Georgia," this is a sufficient description of the farm. It would be unreasonable to suppose that a full and complete description of the lands upon which the labor was to be performed—giving the metes and bounds, the nature and character of the soil, or the exact locality, situation and surroundings— was contemplated by the statute. To support the contention that the contract set out in the accusation is not sufficiently definite and certain, because it does not indicate precisely upon what farm the defendant contracted to work for the prosecutor as a farm laborer, the cases of *Thorn* v. *State,* supra, and *Solomon* v. *State,* 14 *Ga. App.* 115 (80 S. E. 215), were cited. This court in the case of *Thorn* v. *State,* supra, following the decisions of the Supreme Court on the subject, held that where one was prosecuted for a violation of the "labor-contract act," and it was alleged that the wages contracted to be paid to the defendant were a half of the crop made by him as a cropper, but the indictment failed to allege the kind or extent of the crop to be planted, and failed to locate and identify the particular parcel of land which he was to cultivate, the indictment was demurrable, since "a distinct and definite contract of service must be alleged, and the allegations must be sufficiently full to enable the accused to defend against the charge." That decision merely applied former decisions of the Supreme Court holding that the contract of employment must be certain and definite, and laid

down the rule that where the contract was for labor to be performed on the lands of another, it must definitely appear that at the time the contract was entered into there was a distinct agreement as to what particular lands the laborer was to do his work upon, and the accusation or indictment must distinctly allege what lands the accused agreed to labor upon, else it would not appear that there was a contract sufficiently certain and definite in *all* its terms to support such a prosecution. In the *Thorn* case, it is true, the accused was under contract to labor for a half of the crop, and not for a designated amount of money per month, as in the instant case, but the reasoning of Judge Russell, in the first division of the opinion in that case, applies equally well to the case now under consideration. The minds of the parties must meet on all the material parts of the contract, or else there would be no such agreement or contract to labor as would support a prosecution. Suppose, for instance, the employer owned a number of farms in the same county, and, without designating on which particular farm he desired the laborer to work, contracted for work on "the farm" of the employer in that county; the laborer might understand that he was to labor on a certain one of several farms, where the surroundings would be agreeable to him and where he would have easy access to the outside world, and be near schools, churches, physicians, post-offices, etc., and, with this understanding, might apply for and obtain advances from his prospective employer on the strength of the contract before ascertaining anything to the contrary; whereas the employer might intend at the time the contract was made that the laborer should work on a particular farm remote from friends and neighbors and destitute of all the advantages possessed by the farm upon which the laborer himself understood his work was to be done; so there would really be no meeting of the minds of the parties to the contract, and hence no contract. Especially is certainty in this respect required where the contract is relied upon as the basis for a criminal prosecution, where the defendant is entitled to a strict construction of the law.

In the case of *Solomon* v. *State*, supra, this court committed itself generally to the proposition that an accusation charging cheating and swindling under the "labor-contract act," which fails to set out the location of the particular parcel of land where the work is to be performed, is not sufficiently explicit. In that case the de-

fendant demurred on the ground that the accusation did not sufficiently locate the particular parcel of land where the services were to be performed, and hence the contract as set out was too vague and indefinite to put the defendant on notice of the charge alleged against him. The accusation alleged that the defendant contracted to perform, on the farm of his employer in a named county, services as a farm laborer in doing ordinary farm work from the first day of January, 1911, until the fifteenth day of July, 1911, at $20 dollars per month, etc. The ruling in that case was obviously based on the idea that a contract to work on "the farm" of a particular person in a particular county of this State was not sufficiently certain and definite, since the employer might, as above suggested, own more than one farm in that county, and the accused might have had in mind an entirely different farm from the one the employer had in mind at the time the contract was entered into, and might have obtained the advances in good faith with the intention of performing services upon a different farm, and he might have refused altogether to contract with the employer had he known what farm the employer expected him to labor upon.

In the instant case the farm is described in the accusation as "the farm tended by said Alfred Mix, on lands owned by G. W. Lewis, in Irwin county, Georgia." Here it will be noted there are two distinct descriptive statements, each tending to locate this farm —one being that the farm was the farm "tended by said Alfred Mix" in Irwin county, Georgia, and the other being that it is the farm "on lands owned by G. W. Lewis," in Irwin county, Georgia, tended by Alfred Mix. It appears to us that these two elements of description identified the farm with sufficient particularity and certainty, and that at the time the contract was entered into, both the accused and his employer Mix could have had in mind but one farm in Irwin county, since it would hardly be supposed that more than one farm in that county would come under both of these distinct descriptive statements, or, in other words, that Mix was at that time tending more than one farm on lands owned by G. W. Lewis, in Irwin county, Georgia.

The accusation plainly declares that the contract was entered into on the 20th day of January, 1914, in the county of Irwin, and that the defendant thereby contracted to perform for Alfred Mix certain services, to wit, "to work as a farm laborer" on the lands

above described, "for a period of six months, beginning on the first of February; 1914, and ending on the first day of August, 1914, and for the price of fifteen dollars per month and board," which price Alfred Mix agreed to pay. These essential elements of the contract appear to us to be about as definitely set out as possible, and with sufficient particularity to clearly put the defendant on notice as to the alleged terms thereof, especially when taken in connection with the description of the farm, discussed above. So, also, it appears to us that the nature and character of the work to be performed is sufficiently described, and the contract is neither vague nor indefinite, and charges in effect "an intent to defraud," when it alleges, in the language of the statute, that the defendant procured an advance.in money "with intent not to perform the said services so contracted to be performed," and alleges further that the defendant failed and refused to perform the services so contracted to be performed, without good and sufficient cause, and failed and refused to repay the money advanced on the strength of the contract, to the loss and damage of the hirer in an amount stated. We think therefore that the court did not err in overruling the demurrer to the accusation.

The evidence of the prosecutor was that he hired the defendant to work as a farm laborer on the farm tended by him (the prosecutor), in Irwin county, Georgia, which the prosecutor rented from Lewis, and which was the place where he lived; that the defendant agreed to work from February 1, 1914, for six months, at $15 per month and "feeding;" that after he had hired him the prosecutor advanced to the defendant the $40 in money on the strength of the contract; that the defendant came to the prosecutor's farm and worked 13 days and left; that "he never made any excuse for leaving, saying that he was going to see his sweetheart;" that he never returned the money advanced, and the prosecutor had given him credit for the value of the work he did; that the contract was made in Irwin county, Georgia, and was to be performed in the same county. The prosecutor testified further that $20 of the total amount he paid on the strength of the contract was advanced to the defendant in Fitzgerald, Ben Hill county, Georgia, but that he afterwards advanced in Irwin county (where the work was to be performed) $20 more. It is true the prosecutor stated, on cross-examination and at the close of his evidence, that he "considered the

advances made in Fitzgerald, Ben Hill county, Georgia," but since the testimony of the prosecutor that he advanced $20 to the accused in Irwin county was undisputed by any other evidence or by the statement of the accused himself, the jury had the right to assume (as we assume) that the prosecutor, in stating that he "considered" that he had made "the advances" in Fitzgerald, Ben Hill county, Georgia, had reference to the first advance of $20, and not to the later advance made in Irwin county.

There was testimony for the defendant to the effect that the prosecutor entered into an agreement with the defendant and one Vaughn, whereby Vaughn was to assume and pay $1.50 or $2.50 per month—payments to begin after defendant had first paid to Vaughn a small account that the defendant owed him. This, however, was disputed by the testimony of the prosecutor, who also stated that in addition to the $20, above referred to, which was advanced in Irwin county, he paid in that county $2.50 to the defendant's wife, by the request of the defendant, on Saturday night before the defendant quit work and left the farm of the prosecutor. The defendant's statement was, in full, as follows: "I told Alf Mix that I would pay him. I never did intend to beat him out of his money. We couldn't get along together and I left, but I always told him that I would pay him. I went to Mr. Vaughn and asked him to pay the debt for me. Alf Mix told me he would look to Mr. Vaughn and would not look to me any more for the debt." Even from the testimony of Vaughn, who testified in behalf of the defendant, as well as from the testimony of Vaughn's son, who corroborated him, it appears that the proposition for Vaughn to assume the indebtedness of the defendant was made after the contract had been breached by the defendant and he had left the farm of the prosecutor; and, as stated above, the prosecutor denied that there was such an agreement.

At the close of the evidence a motion was made to dismiss the case, on the ground that the court had no jurisdiction thereof, since the prosecutor testified that "he and Jack Lewis [the defendant] made a contract to be performed in Irwin county, Georgia, but he and Jack Lewis went to Fitzgerald, Ben Hill county, and he paid Jack Lewis's debt to Bell Brothers in Fitzgerald, Ben Hill county, Georgia, the same being the advance which he claimed he made to Jack Lewis." The record, as hereinbefore quoted, shows that the

prosecutor testified distinctly that he advanced $20 in Irwin county; and the significance of his further statement, that he considered that "the advances" were made in Ben Hill county, has been already discussed. It is settled that the venue for a prosecution under the "labor-contract act" is in the county where the advances were received (*Dyas* v. *State,* 126 *Ga.* 556, 55 S. E. 488) ; but we think the evidence in this case clearly shows that at least a part of the advances, exceeding in amount the value of the services rendered by the defendant under the contract of employment, were made in Irwin county. The court did not err in overruling the motion to dismiss.

The ground of the motion for a new trial which complains that the court erred in admitting the testimony of Mix that upon the request of the defendant he let the defendant's wife have $2.50 the Saturday night before he left is without substantial merit. This evidence was competent to illustrate in some degree the intent of the defendant, since it threw light on his entire conduct and tended in some measure to show what may have been his continuing purpose from the time he entered into the contract, and when the advances alleged in the accusation were obtained.

The contention that the court erred in allowing Vaughn to testify that he had never paid Mix what the defendant owed him is also without merit, since loss or damage to the hirer is an essential element of the offense charged against the accused, and Vaughn had testified, in behalf of the defendant, that he agreed to pay $1.50 or $2.50 per month on the debt of the defendant, after the performance of certain other conditions; and hence it was proper to show that the amount of the indebtedness due by the defendant had *not* been paid by Vaughn and accepted by the prosecutor, since such a payment and acceptance would have destroyed the criminality of the charge. Besides, had Vaughn testified to any payment to Mix for the defendant, it would have tended to support his evidence as to an alleged agreement between the accused, the prosecutor, and himself, to accept payments from Vaughn by installments; and his failure to show any payments under the alleged agreement during the several months which elapsed after the breach of the contract by the defendant, and before the prosecution was originally instituted, in May, 1914, tended to some extent to discredit the evidence as to the alleged parol contract. Therefore the question was proper on cross-examination,

The request to charge embodied in the 8th ground of the motion for a new trial embraces an instruction that if the defendant entered into an agreement with Vaughn and Mix, whereby Vaughn was to assume the debt of the defendant and pay Mix, "then this would show a good intention to refund the advances regardless of whether the contract could be enforced civilly against the said Vaughn." Clearly this would not have been a proper charge. The crime was already committed, and an arrangement on the part of the accused whereby another was to assume his obligations, and thereby relieve him of the consequences of his violation of the law, surely could not show good intention *at the time he entered into the contract, or at the time the labor was to be performed;* nor would it have been a circumstance from which it might be absolutely assumed that his original intention was not to procure money or other thing of value, and not to perform the services; for this, the original intention, is the intention which is to be considered.

It is urged in behalf of the plaintiff in error that where the person to whom the advances were made performed a certain amount of services, the prosecution fails to carry the necessary burden of proof that loss or damage was actually sustained by the hirer, unless the value of the services is made to appear; and the case of *Abrams* v. *State,* 126 *Ga.* 591 (55 S. E. 497), is cited. The principle of that decision is of course correct; and whether correct or not, the decision is binding on this court; but it appears, from the evidence, that it has no application in this case, since the value of the services actually rendered may be ascertained from the evidence of the prosecutor, to the effect that the defendant, under a contract to labor for $15 per month, actually labored 13 days. The value of the services rendered, at the rate of compensation fixed by the testimony, is ascertainable by calculation, and a deduction of this amount from the amount of the advances made to the defendant would easily determine whether or not the employer had suffered loss and damage.

As ruled in the case of *Thorn* v. *State,* supra, the burden rests upon the State to show that there was in fact no good and sufficient reason for the breach of the contract on the part of the defendant, or that there was no good and sufficient reason why the money advanced on the strength of the contract was not returned. As was said in that case, "without this proof the State's case is incomplete,

because the prosecution has not created the evidentiary presumption necessary to rebut the presumption of innocence. Presumably the accused had good and sufficient cause." An inspection of the record in this case shows that the State failed to establish with any degree of certainty, by the testimony of the witness Mix, that no good and sufficient reason existed why the defendant failed and refused to perform his contract of labor, since Mix himself did not testify that the defendant left his place and breached the contract without good and sufficient cause, but only said that the defendant "never made any excuse for leaving, saying he was going to see his sweetheart." For aught that appears to the contrary, from the testimony of Mix or from any other testimony in behalf of the State, the defendant may have had abundant reason for failing and refusing to carry out his contract. He may have been physically unable to perform it, or Mix may have failed to properly "feed" the defendant as per contract, or the conduct of Mix may have been captious, cruel, or unreasonable to such an extent as made it impossible for the defendant to continue his efforts to carry out his contract, or half a hundred good and sufficient reasons might have existed; the existence of any or all of which would have been negatived absolutely (in the absence of any other proof on the subject), if Mix had testified (in addition to what he did actually say) to facts showing that the defendant had in truth no good and sufficient reason for failing and refusing to perform his contract of labor.

The several objections urged to the charge of the court in the 6th and 7th grounds of the motion for a new trial need not be discussed. No material errors were committed by the court, and the evidence, with the single exception noted in the paragraph just preceding, supports the verdict rendered; but since the evidence fails to supply one of the vital elements necessary to constitute the crime, under the rule laid down in the case of *Thorn* v. *State,* supra, the judgment overruling the motion for a new trial must be

*Reversed. Broyles, J., not presiding.*