WEST, J., disqualified.

————

E. E. WEST AND W. J. HILDERBRANDT, *Plaintiffs in Error,*
   *v.* THE STATE OF FLORIDA, *Defendant in Error.*

CASE NO. 1.

Opinion filed March 5, 1915.

1.  A plea of *nul tiel* record is a proper plea in a *scire facias* on
    a recognizance bond, and it is error for the Judge to sustain
    a demurrer to such plea.  But where it appears on the face

of the record that such plea was interposed for the purpose of proving a variance between the certificates of bail bond forfeiture filed by the Judge and the *scire facias* and the appearance bond, and the State offers in evidence the certificate of the Judge, together with such bail bond, which show upon their face the variance, and the defendants below object to the introduction of said bond and certificate on the ground of such variance, and the trial judge overruled such objections, holding that as a matter of law the variance is immaterial, then the error in sustaining the demurrer to such plea is harmless, because the defendants, by their objection to the evidence upon the ground that there is a variance, received all the benefits which they could have had under the plea of *nul tiel* record.

2. The estreatment of the appearance bond in this case was a statutory proceeding. The proper certificate of the Judge, together with the bond itself, was filed in the Circuit Court. The proper writ or *scire facias* was issued by the clerk of the Circuit Court, and served by the sheriff upon the defendants. The defendants filed several pleas, among them, a plea of *non est factum*. Issues was joined on this plea. .The burden, primarily, of disproving this plea rested upon the State. The State offered in evidence the said certificate of the Judge and the appearance bond. Objection was made to the introduction of the bond on the ground that the execution had not been proven. The objection was overruled. No evidence was offered by defendants, no jury was requested, and the case was tried by the Judge, who entered judgment for the State: *Held*, that the Judge properly overruled the objection that the execution of the bond had not been proven. The certificate of the Judge recited the fact of the giving of the bonded by the defendants, and the default of the principal to appear, and the failure of defendants to produce his body in court. The introduction of this certificate of the Judge in evidence by the State was prima facie proof of the execution of the bond by the defendants, and after its introduction in evidence, the burden shifted to the defendants to show by proper evidence that they had not executed the bond.

3. . Section 3950 of the General Statutes of Florida, requires the Judge to file a certificate where a bond has been estreated, which certificate shall state that the sureties agreed to pay the State of Florida a sum certain unless their principal should appear at a particular term of the court to answer certain criminal charge or charges; and that the said principal has failed to appear in the court to answer such charge, and that the sureties have been called upon, and have failed to produce the body of their said principal in court as their bond required. This certificate has to be under the hand of the Judge, and said section 3950 provides the same shall, in any court of this State, have all the force and validity of other record evidence, and shall be prima facie proof of all the facts set forth therein. When this certificate has been introduced in evidence, it becomes prima facie evidence of the execution of the bond, of the failure of the principal to appear, of the calling of the sureties to produce the body of their principal, of the estreature of the bond, and of the filing of the said bond in the Circuit Court, and shifts the burden of proof to the defendants to prove any matter set up as a defense for the purpose of evading liability on the part of the sureties.

4. The plea of *nul tiel* record in a suit on a forfeited recognizance bond, puts in issue only the existence of the recognizance

5. Section 3953 of the General Statutes, was not intended to vest in Circuit Judges unlimited discretion in the matter of determining .whether or not the sureties on a bail bond have offered a sufficient excuse for not producing in court the body of their principal. While their discretion is large, yet, all questions of law arising in such proceedings must be disposed of in accordance with what is the law and the proper procedure; and the findings of the Circuit Judges in those cases are subject to review by this court just as they are in other cases.

6. Where a Circuit Judge commits an error by improperly sustaining a demurrer to a good plea, but upon an examination

of the entire record in the case, it is ascertained that no injury or harm resulted therefrom, this court will not reverse the judgment 'on account of such harmless error.

7. In a bail bond it is necessary to name the court at which the defendant is to appear, and the date of such appearance, but a mere misnomer of the court, or mis-description in its name, will not invalidate the bond if the court is so described that the defendant and his sureties may know in what court to appear even though the technical name of the court may be omitted and a mere description of the court given, this would be sufficient to bind the principal and the sureties. In a case where the appearance bond described the court as being the criminal court in and for Duval County, when in fact, the offence with which such defendant was charged, was triable only in the criminal court of record of Duval County, the fact that the words "of record" are omitted in designating the court at which the defendant was to appear, is not such a variance as to invalidate the appearance bond, and relieve the sureties. The words "criminal court of Duval county" in the bond are merely descriptive of the court, and refer to the character 'of the business transacted in such court rather than to the technical name of the court.

8. It is necessary in a criminal appearance bond that the offense with which the defendant is charged be stated in the bond; but it is not necessary in a recognizance to describe the offense with legal accuracy, or in the terms of the statute; nor is it necessary to set it forth with the technical precision required in an indictment. It is only necessary that the offence be substantially described; and no clerical error in the description of the offense will invalidate a recognizance. The bail bond herein described the offence with which the defendant was charged as being "with carnal intercourse with unmarried female under eighteen," while the certificate of the judge described the offence as being "carnal intercourse with an unmarried female under eighteen years." The name of the offence is "carnal intercourse with an unmarried female under eighteen years." The word "with" which appears in the bond immediately preceding the de-

scription of the offence is merely surplusage, and the only variance between the bond and the certificate of the Judge is, that the word "years" is left out of the bond. This is not a material variance; the bond sufficiently identifies the offence charged.

9. From certain pleas filed herein it is shown that the defendant appeared at the criminal court of record, the only court having jurisdiction in Duval County of the offence with which he was charged, at the proper time as required in the bond, and the only reason given in the pleas why he did not remain in the court was, that no information charging him with such offence as described in the bond was filed in that court. He appearing in that court at the proper time, should have remained in attendance upon the court until given leave by the court to depart, and having failed to obtain the leave of court permitting his departure, it was proper to estreat his bond and bring action against his surties to recover the penalty thereon.

Writ of Error to Circuit Court for Duval County, Daniel A. Simmons, Judge.

Judgment affirmed.

*B. B. McDonnell* and *Axtell & Rinehart,* for Plaintiffs in Error;

*T. F. West,* Attorney General, and *C. O. Andrews,* Assistant, for the State.

WILSON, Circuit Judge.—On March 28th, 1916, the clerk of the circuit court in and for the Fourth Judicial Circuit of Florida for Duval County, issued the writ required by Section 3951 of the General Statutes, which is in the words and figures as follows:

"To E. E. West and W. J. Hildebrant, sureties: You

are hereby notified that George W. Russell, who gave bond in the sum of two thousand dollars, upon which you are sureties, to appear at the February Term A. D. 1916, of the Criminal Court of Duval County to answer a charge of having carnal intercourse with an unmarried female under eighteen against him, has failed to appear in said court to answer said charge, and that you being called upon by said court to produce the body of said George W. Russell in said County, as your bond required; now therefore unless you appear at the next term of our circuit court to be holden in and for said County on the 9th day of May A. D. 1916 and show to said court good cause why judgment against you and in favor of the State of Florida for the use and benefit of Duval County should not be had for the breach of said bond, judgment thereon will be rendered against you.

"Witness my hand and official seal this 28th day of March A. D. 1916.

"Wm. A. Hallowes, Jr.     Frank Brown
  State's Attorney.     Clerk Circuit Court Duval
                       County, Florida.
                 By H. J. Cassidy, D. C."

(Court)
(Seal)

This writ was duly served by the sheriff of Duval County.

On the 9th day of May 1916, the defendant, W. J. Hildebrandt, who was one of the sureties on the above mentioned bond, filed five pleas; and on the 11th day of Aug. 1916, the defendant, Hildebrandt, filed three other pleas, numbered 6-7-8.

On the 9th day of May 1916, the defendant, E. E. West. who was a surety on the aforesaid bond, filed two pleas

which were subsequently abandoned, and are therefore, not considered.

On the 14th day of August 1916, the defendant E. E. West, filed herein amended and additional pleas. The pleas filed by each of these defendants are the same. It will not be necessary to set out herein both sets of pleas. The pleas are as follows:

"(1) That there is not any record of the said sup-posed written obligatory in said scire facias mentioned, remaining in the said Circuit Court in and for Duval County, Florida, in the manner and form alleged in the said writ of scire facias, and this he is ready to verify.

"(2) And for a second plea in this behalf the said E. E. West says that the said George W. Russell appeared at the February Term 1916 of the Criminal Court of Record in and for Duval County, Florida, to answer the charge "With carnal intercourse with an unmarried ferale under eighteen" and that there has been no information filed against the said George W. Russell in said Criminal Court of Record in and for Duval County, Florida, charging the said George W. Russell with the said supposed offence.

"(3) And for a third plea in this behalf this defendant says that the said George W. Russell did not appear at the February Term 1916, of the CRIMINAL COURT in and for Duval County, Florida, as set forth in said writ of scire facias, there being no such court organized or known under the constitution and laws of the State of Florida, as the 'Criminal Court for Duval County,' and that he is ready to verify.

"(4) And for a fourth plea in this behalf the said defendant says, that the bond described in the certificate of the Judge of the Criminal Court of Record in and for

Duval County, Florida, filed in this proceeding as required by law, is not the bond of this defendant.

"(5)  For a fifth plea in this behalf defendant says that the bond described in the said scire facias issued herein is not his bond.

"(6)  And for a sixth plea in this behalf defendant, E. E. West, says that on the 13th day of December, 1915, the Circuit Court in and for Duval County, Florida, made and entered an order of record providing that a bond for the appearance of George W. Russell be fixed in the penal sum of Two Thousand Dollars to be approved by the sheriff of Duval County, Florida, conditioned that the said George W. Russell should appear at the next term of the Criminal Court of Record for Duval County, Florida, and from day to day and term to term; that no other or different order was ever made fixing the bond of the said George W. Russell, and that the bond described in the scire facias issued herein is not the bond fixed and described in the said order, and this he is ready to verify.

"(7)  And for a seventh plea in this behalf defendant, E. E. West, says that the said George W. Russell appeared at the February Term 1916 of the Criminal Court of Record in and for Duval County, Florida, to answer the charge "With carnal intercourse with an unmarried female under eighteen," and that no information or indictment has ever been filed against the said George W. Russell, in the said Criminal Court of Record in and for Duval County, Florida, charging the said George W. Russell with the said supposed offence.

"(8)  And for an eighth plea in this behalf the said E. E. West says that on the 13th day of December 1915 the Circuit Court in and for Duval County, Florida,

made and entered an order, providing that a bond for the appearance of the said George W. Russell be fixed in the penal sum of Two Thousand Dollars, to be approved by the sheriff of Duval County, Florida, conditioned that the said George W. Russell should appear at the next term of the Criminal Court of Record in and for Duval County, Florida, and from day to day and term to term, that no other or different order was made, fixing the said bond for the said George W. Russell, and that the bond described in the scire facias issued herein is not the bond fixed and described in said order, in this, that the bond in said scire facias required the defendant to appear at the next term of the Criminal Court for Duval County, Florida, and this he is ready to verify."

The State Attorney demurred, severally, to each and all of these pleas, and also made a motion to strike them, the demurrer and motion being based upon practically the same grounds. The points of law submitted by the demurrer are as follows:

"(1) Said pleas fail to show a sufficient legal excuse for the default of the defendant, George W. Russell, in failing to appear in the Court when and where said bond required him to appear.

"(2) Said pleas fail to set forth any facts showing a sufficient legal excuse for the failure of the defendant, George W. Russell, to appear in the Court when and where said bond required him to appear.

"(3) Said pleas fail to set forth any material variance between the alleged crime the defendant, George W. Russell, was charged with and the alleged crime set forth in said bond which required his appearance as provided therein.

"(4) Said pleas fail to show a material variance

between the order providing for an appearance bond of the said George W. Russell and the condition of said bond requiring the appearance of said defendant to answer the charge brought against him through an indictment by the Grand Jury of Duval County, Florida.

"(5) That said pleas upon their face admit by confession an avoidance that the said George W. Russell appeared in the Criminal Court for Duval County, Florida, in compliance with the condition of said bond, and thereafter, the said defendant, George W. Russell, was not present in the Criminal Court of Record in and for Duval County, Florida, when said bond was duly estreated.

"(6) That said recitation in said bond requiring the defendant, George W. Russell, to appear in "the Criminal Court of Duval County, Florida," to answer the charge "with carnal intercourse with an unmarried female under eighteen" is not a material variance sufficient as a matter of law to avoid said bond, when said pleas by confession and avoidance admit that the defendant, George W. Russell, as conditioned therein, thereafter appeared in the Criminal Court of Record for Duval County, Florida.

"(7) That it appears from the Public Records of Duval County, Florida, that the defendant, George W. Russell, by warranty deed of conveyance indemnified the defendants herein with property owned by him valued in excess of the amount of the liability of either of these defendants under said bond.

"(8) Said pleas upon their face by confession and avoidance admit the defendant, George W. Russell, was not present in Court when said bond was estreated as conditioned therein.

"(9)    That said pleas are inconsistent.

"(10)    That said pleas are waived because the defendants herein have pleaded to the merits of this cause.

"(11)    That said pleas are susceptible of two intendments.

"(12)    That said pleas are duplicitous.

"(13)    That said pleas are a negative pregnant.

"(14)    That said pleas state conclusions of law, and by confession and avoidance attempt to justify said defendant not being present in Court as conditioned in said bond.

"(15)    That said pleas fail to traverse, confess or avoid plaintiff's cause of action.

"(16)    That said pleas are immaterial and irrelevant, and tend to embarrass and delay a fair trial of this cause."

As the grounds for the motion to strike are practically the same as the grounds of the demurrer, it is not deemed necessary to repeat them.

On the 21st day of August 1916, the Circuit Judge made an order sustaining the demurrer as to the 1-2 & 8 pleas, and overruled as to the 4-5 & 6 pleas. On the same day the Circuit Judge also granted a motion to strike the 3 & 7 pleas, and overruled the motion to strike as to the 1-2-4-5-6 & 8 pleas. As the Court had already sustained a demurrer to the 1-2 & 8 pleas, this left only the 4-5 & 6 pleas in, and issue was joined upon these pleas, and the trial, which was before the Judge, resulted in a finding for the State, and final judgment was accordingly entered.

There are ten assignments of error, some of which have been abandoned, and while we will not take them up and discuss them *seriatim,* still, we will endeavor, in

reviewing the case, to dispose of those which are not abandoned.

The first assignment of error is based upon the order of the Circuit Judge in sustaining the demurrer to the first plea of the defendants. This is a plea of *nul tiel* record.

The laws of Florida, Section 3949, General Statutes, provide that "Whenever any bond is taken for the appearance of any person charged with a criminal offence before any court in this State, and such person fails to attend said court as prescribed in said bond, the presiding judge of said court shall cause the sureties on said bond to be called upon to produce the body of the person for whose appearance they have given bond."

Section 3950 of the General Statutes provides for the making of the certificate by the Judge and reads as follows:

"When the sureties have been called as required in the preceding section and have failed to produce the body of the person for whose appearance the bond has been given as aforesaid, the presiding judge of said court shall, during said term of court, or as soon thereafter as possible, make and sign a certificate setting forth the facts of the giving of the bond, the breach of its conditions, and the failure of the sureties thereon to produce the body of the defendant, which certificate, under the hand of the justice or judge of said court, shall, in any court in this State have all the force and validity of other record evidence, and shall be prima facie proof of all the facts set forth therein."

This section also provides that this certificate of the Judge, together with the bond, shall be forthwith transmitted to the clerk of the circuit court of the county

23—Vol. 75

where said bond is made payable. It then became the duty of the clerk of the circuit court to issue the writ, or what is generally known as a scire facias. The certificate of the judge, and the bond, became a record of the circuit court, and has the same force and effect as a judgment *nisi.* It is a general rule that a scire facias must always be based upon a record. And the writ of scire facias, which issued upon the forfeiture of this bond recognizance takes the place of both summons and declaration. 5 Cyc. 140, and the note, 49, citing authorities.

The plea of *nul tiel* record is one which directly raises the point as to whether or not there is such a record as is described in the certificate and the scire facias. There are some courts which hold that the certificate or the judgment *nisi* has the same force and effect as a judgment, and imports verity, and therefore, cannot be attacked by a plea of *nul tiel* record. We do not think this rule obtains in Florida, for the reason that the statute providing for this certificate of the Judge, which is the basis for issuing scire facias, declares that the said certificate, under the hand of the justice or judge of said court, shall, in any court in this State, have all the force and validity of other record evidence, and shall be prima facie proof of all facts set forth therein. If it is to be considered as only prima facie proof of the facts set forth therein, then, surely, an attack may be made on it by plea, for if such were not the case, then, it would not be merely prima facie evidence, but would be conclusive. It is well established that a plea of *nul tiel record* is a proper plea to a scire facias on recognizance. See Vol. 34 of Cyc. 565, Mooney v. People, 81 Ill. 134; State v. Crippen, 1 Ohio St. 399; State v. Kruise, 32 N. J. L. 313; State v. Rhonimus, 47

Miss. 314; Wood v. Com. 4 Rand, (Va.) 329; Gingsley v. State, 6 Yerger, 354; Peyton v. Stewart, 7 Tenn. 156; 23 Cyc. 1517; 5 Cyc. 145.

This plea puts in issue only the existence of the record of the recognizance.

Counsel for defendant in error, in their brief, refer to section 3959 of the General Statutes as conferring upon the Circuit Judges discretion to determine whether or not the sureties have shown sufficient cause for the default in appearance of the principal. It is true that the statute provides "for the sureties, or either of them, to appear in said circuit court as required by said notice, and show sufficient cause for the default of the defendant in failing to appear in the court when and where said bond required him to appear, the sufficiency of their said excuse is to be determined by the circuit court." It is true that said section also provides that if the excuse, in the judgment of the court, is not sufficient, or if said sureties fail to appear, it is made the duty of the Judge of the Circuit Court, and he is given the power, to enter a final judgment on behalf of the State for the benefit of the County. We do not take this to mean that the circuit judge is vested with an incontrovertible, unlimited, discretion to say that the excuse offered is either sufficient or insufficient. Undoubtedly, if there was some matter, not strictly legal, which could be presented by way of showing the court that the bond ought not to be estreated, nor final judgment entered therein, then, the judge, under this section, has the right and power to refuse to require a final judgment against the sureties. As a matter of fact, it frequently happens that estreature of bail bond is set aside by the court upon some defense or showing, not strictly legal in its nature,

but which appeals to the sound discretion of the court as being a sufficient reason for not requiring the sureties to pay the bail bond; but we cannot say that this statute, Section 3953, was intended to put it entirely or conclusively within the power of the Judge to say that a bail bond should, or should not, be collected. Such a construction would destroy the statute, rendering it unconstitutional by depriving the parties of the right to appeal to this Court. On the contrary, we find that this discretion vested in the circuit judges by the said section, is subject to review and control by this court. In the case of Harris, et al. v. State, 66 Fla. 89, the circuit judge of Duval County, entered judgment against the sureties on a bail bond, holding that the excuse offered by the sureties was not sufficient to avoid liability upon the part of the sureties. If this court had intended to hold that the matter of a sufficient excuse for failure to produce the body of the defendant was left entirely to the discretion of the circuit judge, under this section of the statute, aforesaid, this court would have affirmed the judgment of the lower court in that case. But instead of affirming it, this court said "the discretion of the court in passing upon the facts in matters of this kind is very large, but we have presented to us on this record a question of law only, and upon mature deliberation, but without attempting the impossible task of laying down general rules to guide the circuit judges in these proceedings, as to which their own good sense must of necessity be the primary guide, we think the particular action now before us called for some further investigation, and did not warrant what is in effect a judgment *nil dicit.*" Thus, it will be seen that matters involving legal questions arising in the

estreature of bonds, the circuit judges are not given unlimited discretion. All questions of law arising in such proceedings must be disposed of in accordance with .what is the law and the proper procedure: It is our opinion, that under the law, the plea of *nul tiel* record was a proper plea in this case, and it was error on the part of the circuit judge to sustain the demurrer of the State to such plea. However, the question arises, is the error prejudicial to the defendants, or in view of all the facts and circumstances, was it merely harmless? An investigation of the transcript herein reveals the fact that there was such a record. Counsel for defendant in error, in their brief, in speaking of the plea of *nul tiel* record, say, "yet it seems that under this kind of plea, it is the proper practice for the court to determine the issue on the plea by an inspection of the record; and if this fails to show jurisdiction of the person, or the matter inquired about, it cannot be aided by other evidence." From this it would appear that counsel confuses the real point involved, which is the order sustaining the demurrer to the plea of *nul tiel* record, with what is the proper practice for the court to follow in determining the issue on the plea. Naturally, the court upon an inspection of the record, upon the trial of the case, may ascertain from such evidence whether or not the plea should be sustained, and judgment entered discharging the sureties. But if the plea of *nul tiel* record is a proper plea, and we hold it to be such, then, the demurrer to the plea should have been overruled, so as to let the evidence be offered showing whether or not there was such a record. It is true that the Judge is the one to pass upon this question, both upon the demurrer and upon the final hearing, but the distinction

must be drawn between whether the plea on demurrer is a good plea, or whether the plea on the trial has been sustained by the evidence. We consider the error in this instance harmless. The transcript shows that the certificate of the judge was filed in accordance with law, and that a recognizance bond was made and filed. The transcript further shows that this certificate of the judge and the bond referred to were both offered in evidence by the State. It was necessary for the State to offer this certificate, and the bond, in order to make out its prima facie case. As the only question involved under the plea of *nul tiel* record is whether there was actually such a certificate and bond, and as both of these were introduced in evidence by the State, over defendants' objections, the defendants obtained all of the benefits, through their objections to the introduction of the certificate of the judge and the bond, which they could have obtained if the plea of *nul tiel* record had been allowed to remain in. After all, it is easily ascertained from the transcript, that the whole trouble in this proceeding was an alleged variance between the certificate of the judge offered in evidence and the writ or scire facias, and a variance between the bond offered in evidence and the writ or scire facias. The objections to the introduction of the said certificates of the judge and the bond are as follows:

"1:  Because there is a variance between the certificate offered in evidence, and the one described in the writ or scire facias."

"2:  Because the certificate offered in evidence sets forth that a bond for the appearance of George W. Russell, at the criminal court of record, was estreated, and the scire facias described a bond estreated in the Criminal Court of Duval County, Florida.

"3: Because the certificate offered in evidence described the offence with which the said George W. Russell was charged as follows: 'Carnal intercourse with an unmarried female under eighteen years,' while the writ of scire facias described the offence with which the said George W. Russell was charged as follows: 'Having carnal intercourse with unmarried female under eighteen.'

"4: Because the bond described in the certificate of the judge offered in evidence required the appearance of the said George W. Russell at the Criminal Court of Record in and for Duval County, Florida, while the bond described in the writ or scire facias required the appearance of the said George W. Russell at the Criminal Court of Duval County, Florida.

"5: Because the said evidence is immaterial and irrelevant."

These objections were overruled by the court and the certificate and bond were allowed in evidence, and the defendant excepted to such ruling. An examination of the certificate of the judge as contained in the transcript, shows that the said defendants agreed to pay the State of Florida Two Thousand Dollars, unless, the said George W. Russell should appear at this term of the Criminal Court of Record for Duval County, to answer the charge in this case, which is described therein as "Carnal intercourse with unmarried female under eighteen years." The bond of the defendants, which was estreated, and introduced in evidence, as embraced in the record, was conditioned that the said George W. Russell, shall appear at the next term of the Criminal Court to answer a charge "with carnal intercourse with unmarried female under eighteen." The writ of scire facias issued to the defendants by the clerk of the circuit court

notifies the sureties that George W. Russell gave bond in the sum of Two Thousand Dollars, upon which the defendants were sureties, to appear at the February Term 1916 of the Criminal Court of Duval County, to answer a charge of "having carnal intercourse with an unmarried female under eighteen."

It will be seen from this inspection of the transcript that the certificate of the judge shows that the defendants became sureties for the appearance of George W. Russell at this term of the Criminal Court of Record of Duval County to answer a charge of "carnal intercourse with unmarired female under eighteen years," while the bond given by the defendants with George W. Russell as principal, bound the said George W. Russell to appear at the next term of the Criminal Court in and for Duval County, to answer a charge "with carnal intercourse with an unmarried female under eighteen." The objections heretofore mentioned, are based upon these variances. The certificate of the judge showed Russell was to appear in the Criminal Court of Record, while his bond showed that he was to appear in the Criminal Court in and for Duval County. And the scire facias showed that he was to appear in the Criminal Court of Duval County. Thus it will be seen that on this point, the bond and the scire facias were similar in language in designating the court in which Russell was to appear as being the Criminal Court of Duval County, while the certificate of the judge shows that he was required to appear at the Criminal Court of Record of Duval County. In other words, it is claimed by the defendant that because of the failure of the person taking the bond, to add the words "Of Record" to the name of the court in which Russell was to appear, it invalidated his bond and

released the sureties, and that these variances in the use of the words "Of Record" in the certificate of the judge, and the failure to use these same words in the bond and the scire facias, constituted a fatal variance.

If this had constituted a fatal variance, then, the court erred in admitting the bond and certificate in evidence, and if the court erred in admitting these two papers in evidence, then, the defendants have received all of the benefits which they could have received or obtained under their plea of *nul tiel* record. The first question then for us to determine is, was this alleged variance a fatal one? We do not think so. In the first place, we are all charged with knowledge of the law. We are held to the knowledge of the fact that there is but one court in Duval County that has jurisdiction to try the offence with which the defendant, Russell, was charged. Russell, and the sureties on his bond, defendants in this case, are charged with the knowledge of the fact that it was the Criminal Court of Record of Duval County, and the only Criminal Court in Duval County which had jurisdiction to try the offence with which he was charged. When these defendants, in consideration of procuring the release of Russell from prison, became sureties for his return to court for trial at the proper time, they entered into an undertaking or contract under the laws of the State of Florida, recognized by the laws of Florida as being a legal undertaking. The laws of the State enter into and become a part of the contract made in this State. When these respondents entered into the undertaking to have the body of Russell forthcoming, the law entered into and became a part of their contract or obligation, and as the law provides for the terms of the State courts in Duval County, and provides what court shall have jurisdiction to try the case with

which Russell was charged, these defendants are held to a knowledge in what court their obligation required the said Russell to appear. The law sets out how many terms of this court shall be held annually, and where it shall be held. See section of the General Statutes.

It is clear to our minds, that the case is not one in which the bond was made returnable to a court that had no existence; but it is simply a case where an appearance bond, through a clerical error, contained a mis-description or misnomer of the court. It was the only court which had jurisdiction to try the offence charged; and a mere mis-description or misnomer of the court will not render the bond void, nor relieve the sureties thereon.

In the case of Petty v. People, 118 Ill. 148, 8 N. E. Rep. 304, a question similar to this was discussed, and decided adversely to the sureties in this case. After dealing with other matters, the court said "the only remaining point urged as a ground for reversal which we deem worthy of special notice is one which assails the validity of the recognizance itself. By recurring to the condition of the recognizance as above set forth, it will be perceived that it does not, in express terms, require the accused to appear before the circuit court of Adams County. The exact language used is that he 'shall personally be and appear before the *criminal court* of said county of Adams, on the first day of the next term thereof, to be holden in the court-house, in Quincy, on the third Monday of January 1885.' This court will take judicial notice that there is no court in Quincy or Adams County called or known as the criminal court of Adams County. The word "criminal" therefore, must have been used in that connection to *describe* the court, rather than to designate it by its supposed name; the

word having reference to the character of the business, that is,—criminal business, to be transacted at the term of the court to which the accused was required to appear. We do not doubt at all that a recognizance which does not, in substance, specify the court; and the term of the court, at which the accused is required to appear, is inoperative and void for that reason, yet we think this may be done without giving the technical name of the court by which it is legally called and known. In the present case it must be conceded the legal and technical name of the court does not anywhere appear in the recognizance. The object of naming the court is obviously to enable the accused to know of a certainty before what tribunal he must appear. This would seem almost indispensable where two or more courts, exercising the same jurisdiction, are in session at the same time and place: but after all, if in any case sufficient appears in the recognizance to enable the accused to know, beyond a reasonable doubt, the tribunal before which he is required to appear, the object of naming the court in express terms, is fully answered, whether so named or not. Such, we are of opinion, is the case here. The time and place of appearing are specifically stated in the recognizance, and no other court recognized by law, having power or jurisdiction to hear or determine a charge of horse-stealing, could lawfully have been in session, or entitled to convene, at that time and place, except the circuit court of Adams County. Had the accused appeared at the time and place specified in the recognizance, about which there was no uncertainty whatever, he would have found that court, the only one in the world authorized to hear and determine the charge against him, in session, ready to consider the

charge in due course of. business. We are satisfied the accused has not been .mislead by. reason of the alleged defect .in the recognizance, and to .allow..the objection to prevail would be, in our judgment, to defeat the ends of justice by a mere technicality. This ought not .to be done. The tendency of legislation, as well as the decisions of the court, is to have legal.controversies of all kinds disposed of on their merits, and not upon mere technicalities." It will be noted that this case is on.all fours with the present case. In that case the language used was that he, referring to. the defendants therein, shall personally be and appear before the criminal court of said county of Adams on the first day of the next term thereof to'be holden in the court-house in Quincy, on the third Monday of January, 1885. The court said it would take judicial notice that there was no court in Quincy or Adams county .called or known as the criminal court of Adams county, and that the word "criminal" therefore, must have been used in that connection to describe the court rather than to designate it by its supposed name. The word having reference to the character of the business, that is, criminal business. The same may be said of the language used in the bond in this case. It had reference more to the character of the business transactions in the Criminal Court of Record, than to the actual name of the court. See also the case of Mason v. Terrell (Ga.), 60 S. E. Rep. 4; body of the opinion on page 7, in which the name of the County in which the defendant was to appear was left blank; Corpus Juris Vol. 6, 959, while holding that a recognizance should properly designate the place or court where the accused is .to appear, yet, the declaration that "a 'mere misnomer of the court will not necessarily avoid it, and it is not essential that the legal technical name

of the court shall appear where the court is so described that the accused can know the one intended." See also Com. v. Stegela, 11 Ky. Op. 533, which held that the omission of the word "Fulton" before the words "Circuit Court" in the bond, does not invalidate the bond. The sixth volume of Corpus Juris, 1015, also declares "mere technical defects in form, or omissions, or additions, which are not material in any way, and from which no injury is shown to have resulted, will not affect the validity of a bail bond or the recognizance." See also U. S. v. Dunbar, 83 Fed. 151; 27 C. C. A. 488, and Shipe v. State, 40 Neb. 524, 59 N. W. Rep. 100; 86 Ill. 176; McCarty v. State, 1 Blackf. (Ind.), 338; Martin v. Campbell, 120 Mass. 126; State v. Lambert, 44 W. Va. 308; 28 S. E. Rep. 930; 34 Cyc. 549; Gen. Bonding & Casualty Ins. Co. v. State, (Texas), 165 S. W. Rep. 615; 7 Ky. Law Rep. 704; Pearson v. State, 7 Tex. App. 279. In Douglas, et al. v. State, (Tex.), the Court of Appeals of Texas, 9 S. W. Rep. 733, the court held that "where the day designated in the bond is that fixed by the law in force at the time the bond is taken, the bond is valid, though the time for holding court is changed by statute before the specified day, and the obligors, being charged by law with notice of such change, are liable for the appearance of the principal on the day to which the term of court is changed."

In the case of People v. Carpenter, 7 Cal. 402, the court held that "it is not necessary for the bond to set forth the particular court in which it was the duty of the party to appear. The law has provided in what court such offences are triable, and the law enters into and forms a part of the undertaking of the defendants." Under the law as declared by that court, it is not necessary to name in the bond any particular court in which

it was the duty of the defendant to appear. It would be extremely technical to say that persons indicted for a crime could not ascertain the place where he is to be tried.

We are not unmindful of the fact that the authorities are not in harmony with reference to the naming of the court at which the defendant must appear, but we find that the trend of modern opinion is, to the effect that mere irregularities or clerical omissions or misnomers in naming the court, are not looked upon favorably as being sufficient grounds to defeat the judgment against the sureties on their bail bond or recognizance. We have examined a number of cases cited by counsel on behalf of plaintiffs in error, and find that they do not, in the main, uphold the particular questions involved in this suit. For instance, in the case of State of Louisiana v. Young, et al., 20 La. Ann. 397, the bond was given returnable to the First District Court of New Orleans, and it was afterwards discovered that that court had no jurisdiction, so it was transferred to the District Court of the Parish of Jefferson. This case is not in point. In the case of the State of Tenn. v. Sullivant, 3 Yerger Rep. 281, the bond was returnable to no term of the court, and necessarily, there could be no compliance therewith, and it was void. This case is not in point. In the case of State v. Stephens, 2 Swann, 308, the court held that a defendant cannot be required to appear at a time different from that stipulated. This case is not in point. The case of Commonwealth v. Bolton, 1st S. & R., 328, was a case in which defendant was recognized to appear on a certain day before the Supreme Court of the Eastern District of Pa. There was no such court then and there in session, and there could be no compliance with the bond, and therefore, could be no forfeiture. In the case of U.

S. v. Keiver, 56 Fed. Rep. 422, the point involved was en-
tirely different from the one involved here.    In that case,
a bond was taken for defendant's appearance at a special
term, yet to be called, and after the date was fixed in the
bond no special term of the  court was called,  but two
regular terms intervened, and then a special term was
called, under these circumstances, the sureties were held
not liable, but this is not a case in point.  In a case of
Treasurer v. Merrirr, et al., 14 Vt. 64, the recognizance
was to a time when there was no term of the court, and of
course, could not be complied with.  It is not applicable
The same may be said of Burnett v. State, 18 Texas App.
283, where the bond required the defendant to appear at
a time when there could be no legal term of the court.  In
State v. Williams, 37 La. Ann. 200, the sureties at the
same time of the estreature  brought the defendant into
court, and the court held  that the forfeiture  should be
vacated.    We are convinced that the bond sufficiently
describes the court in which Russell was to appear.  The
law fixes the time for the holding of that court.    The
law makes that the only court in which the charge against
Russell could be tried.    The name of the court, as stated
in the bond, was merely  descriptive of the  court with
regard to the character  of its  business,  and  was not
intended strictly as the proper name of the court; but
when the bond described the court as being the "criminal
court," it necessarily follows that the principal, as well as
the sureties, knew that such was a  description of the
court in which the criminal business was transacted, and
the holding that the sureties are not bound by reason of
the fact that the actual proper name of the court was not
designated in the bond, would be lending too much weight
to immaterial technicalities.  We might further add that
it is not unusual  to designate the  criminal  courts of

record in this State as "Criminal Courts."      It is so done even by the constitution which creates the courts.      See Section 24 of Art. 5 of the Constitution of Florida, which provides for the establishment of a criminal  court of record, which may be procured by each County, under certain conditions therein named.      In this section the court referred to is mentioned as being " a Criminal Court of Record," and this is the only section of the constitution in which this court is referred to as being a "Criminal Court of Record."  Section 25 provides that "The  said courts shall have jurisdiction of all criminal cases  not capital which shall arise in said counties respectively."  Section 26 of same Article, provides, that "there  shall  be six terms of said courts in each year."      Section 27 of the same Article says, "there shall be for each of said courts a prosecuting attorney, who shall  be appointed  by the Governor and confirmed by the Senate,  and  who shall hold his office for four years.  His compensation shall be fixed by law."  ˙Section 28 of  same Article  provides "all offences triable in said court shall be prosecuted upon information under oath,  to be filed  by the prosecuting attorney, but the Grand Jury  of the Circuit  Court in which  said 'criminal  court' is  held, may  indict  the offences triable in the 'criminal court.'      Upon the finding of such indictment the circuit judge shall commit or bail the accused for trial in the 'criminal court,' which trial shall be upon information."  Section 29 of said Article provides "The county courts in counties where such *criminal courts* are established, shall have no criminal jurisdiction and no prosecuting attorney."  Russell and his sureties are held to a knowledge of, this provision of the Constitution, and must have known where the case was to be tried.

It will be observed that in referring to this court, the

"Criminal Court of Record," the constitution mentioned it as "Criminal Court" three times in said section 28, and once in said section 29; and twice in said section 28. it is referred to without saying "Said Criminal Court," but is merely mentioned as "The Criminal Court." It can hardly be successfully argued that it was the intention of the constitution to give those courts both names, that is, "Criminal Court of Record" and "Criminal Court," yet, we find the constitution itself referring to that court as the "criminal court," which in all probability, is used in the constitution not for the purpose of renaming the court, but for the purpose of designating or describing the court according to the business transactions therein, without special reference to its technical name. If it is mete and proper for the constitution which creates the court, to refer to it as the "Criminal Court" we see no harm or injury that can be done to any one when a bail bond refers to the court as the "Criminal Court;" nor can we see how such reference to that court, without mentioning its technical name, can invalidate the bond estreated herein. With this view of the case, we reach the conclusion that the court committed no reversible or harmful error in sustaining the State's demurrer to the defendant's first plea. If the variance referred to between the scire facias and the bond and certificate of the judge is an immaterial one, then even if the plea of *nul tiel* record had been permitted to remain in, the defendants would not have obtained any benefit therefrom.

There was still another objection to the introduction in evidence of the certificate of the judge and the bond upon the ground that there was a variance between the alleged offence attempted to be set forth in the bond and that which is set forth in the certificate of the judge, and further, because it is claimed that the bond does not set

forth any offence against the Laws of Florida, and because the execution of said bond has not been proven.

The difference upon which the claim of variance is based, is indeed slight. The bond describes the alleged offence as being conditioned for the appearance of the defendant, George W. Russell, to answer a charge "with carnal intercourse with an unmarried female under eighteen." While the certificate of the judge referred to this offence as being "carnal intercourse with unmarried female under eighteen years." The only difference, it will be noted, between that alleged charge mentioned in the bond and the one mentioned in the certificate of the judge is, that in the bond the preposition "with" appears immediately before the word "carnal," while it does not appear in the certificate of the judge, and that the word "years" is omitted after the word "eighteen" in the bond, while in the certificate of the judge, the word "years" comes immediately after the word "eighteen." The technical name given to this offence in section 3521 of the General Statutes is "carnal intercourse with unmarried female under eighteen years." It is true that in the body of this section, in describing the offence, it uses the words "under the age of eighteen years," but in designating the offence by name, it merely refers to it as "carnal intercourse with unmarried female under eighteen years." Comparing this with the certificate of the judge, we find it is the same identical language. Comparing it with the bond which was offered in evidence, we find that it contains the same language with the exception that it leaves off the word "years." The word "with" which precedes the word "carnal" is mere surplusage, and should not be given any consideration. See 5 Cyc. 99; Sweetser v. State, 4 Blackf (Ind.) 528. Then the only thing we have to deal with is whether or not the omission of the

word "years" is sufficient to show the lack of a criminal offence being charged.     While we have little faith in the correctness of this objection, still, we have given it close study, and are of the opinion that the court was correct in overruling the objection to the introduction of the certificate of the judge and of the bond·     There was no material variance.     The bond set out clearly what offence was charged, and no one could have been mislead by the language used in the bond in charging the offence.     It is the rule that no clerical errors in the description of the offence will invalidate a recognizance.     It is not necessary in a recognizance to describe the offence with legal accuracy, or in the terms of the Statute, nor is it essential that the instrument designate by number the section of the Statute alleged to have been violated.   The offence need only be substantially described.     It will not be necessary to set it forth with the technical precision required in an indictment.     There is such a weight of authorities in support of this proposition that they are staggering, and it would be useless to attempt to cite them or even any appreciable number of them.     See 5 Cyc. 98-99, and authorities cited; 3 Am. & Eng. Ency. of Law. 2 Ed. 696; Murray v. People, 49 Colo. 109; 111 Pac. 711; see note 38 L. R. A. (NS.) 310 *et seq.*   Among the citations in this note are many Texas cases which may be placed in a class all their own and practically independent of any other decisions.   The majority of the cases cited from Texas are under a statute which required the bond to describe the offence.     State v. Arledge, 48 La. Ann. 19 South. Rep. 761; 49 La. Ann, 22 South. Rep. 199.     "The offence need only be substantially described, it not being necessary to set it forth with technical precision required in an indictment;" see 6 Corpus Juris, 999, and authorities cited in note 99 on same page.     "Nor need the facts of the case

be set forth, it being sufficient, if the offence be specified
in general terms." Wells v. Terrell, (Ga.), 49 S. E· Rep.
319; Halcombe v. State (Ala), 12 South. Rep. 794. See
Foster v. State (Texas) 42 S. W. Rep. 998, and this is in
a state where the statute required a recognizance for ap-
pearance for trial to recite the offence of which the prin-
cipal stands charged. White v. State (Texas), 74 S. W.
Rep. 770; State v. Reiman (Del) 50 Ar. Rep. 268. In
the case of Allen v. Commonwealth (Ky), 73 S. W. Rep.
1027, in a state where the statute provides that the under-
taking of bail bond shall describe the offence with which
the principal is charged, it was held that on a prosecution
of violation of the local option law, the bail bond which
recited that the defendant was in custody charged with
the offence of V. L. O. L., was sufficient. Main v. Com-
monwealth, 56 S. W. Rep. 970; Clark v. Gordon (Ga), 9
S. E. Rep· 333; State v. Reams, (La), 66 South. Rep. 393;
Foster v. Gorden, (Ga), 13 S. E. Rep. 512; Vincent v.
Northern, (Ga) 19 S. E. Rep. 991; Commonwalth v.
Teevens, (Mass) 9 N. E. Rep. 524; People v. Barnes, 2
Pac. 493; Camp v. State, 45 S. W. Rep. 490-491.

We are clearly of the opinion that the language used
in the bond sufficiently sets forth the alleged crime with
which the defendant, Russell, was charged, and we do
not consider that there is any such variance as would
entitle the sureties to any relief by reason thereof.

There is another objection raised to the introduction of
the bond, and that is upon the ground that it was not
proven. The transcript shows that the defendants filed
pleas of *non est factum*. These pleas, under our practice,
put in issue solely the question of whether or not the
defendants executed the bond which was estreated, and
which was offered in evidence. There are some conflicts
in the authorities about where the burden of proof is.

Under a plea of this character, under our statute providing for the forfeiture of bail bond, there is no question as to where the burden of proof lies.    The statute itself, section 3950 of the General Statutes, states that when the sureties have been called and have failed to produce the body of the person for whose appearance  the bond has been given, the presiding judge shall make and sign a certificate setting forth the facts of the giving of the bond, the breach of its conditions, and the failure of the sureties to produce the body of the defendant, which certificate, under the hand of the judge, shall  in any court  in this State have all the force and validity of other record evidence, and shall be prima facie proof of all the facts set forth therein.  . It will be observed  that this certificate required of the judge, contains a statement from him setting forth the giving of the bond; the breach of its condition, and the failure of the sureties thereon to produce the body of the defendant.    The transcript . shows that this certificate, together with the bond itself, was filed in the circuit court.    It then became prima facie evidence, not only of the estreature of the bond, but also of the facts set forth therein.    The certificate sets forth the fact that these defendants, plaintiffs in error here, agreed in said bond to pay the State of Florida: Two Thousand Dollars unless the said Russell should appear, etc.    This is prima facie evidence of the fact that these defendants executed the said bond as sureties,  and when  the bond and the certificate of the judge were filed in evidence, they were *prima facie* evidence that these defendants executed the bond.    The burden of proof shifted to the defendants to show that they did not  execute  the bond.    They offered no testimony, whatever,  along  this line, consequently, there was no error on the part of the court below

in entering judgment against the said defendants upon the said certificate and bond.

There is another matter involved in this case that should be seriously considered. The second and seventh pleas of the defendants admit that their principal, George W. Russell, *appeared* at the February term 1916 of the Criminal Court of Record in and for Duval County to answer the charge "with carnal intercourse with an unmarried female under eighteen," and no information was filed against him. They do not say in these pleas that he departed by leave of the court, yet, the bond contained a stipulation not only to *appear*, but also to "appear from day to day and term to term of said Court, and not to depart the same without leave." When he appeared it was his duty to remain in attendance until given leave to depart. 5 Cent. Dig. Bail. section 317, and authorities cited; State v. Ruthing *et al.*, 49 La. Ann. 909, 22 South. Rep. 199; State v. Arledge, 48 La. Ann. 774, 19 South. Rep. 761. If no indictment or information was filed against him, he should have applied to the Court for discharge. Commonwealth v. Teevens, 143 Mass. 210, 9 N. E. Rep. 524.

If the defendant, Russell, appeared in the Criminal Court of Record in and for Duval County to answer the said charge, and this fact was known to his sureties, who admit it by their said pleas, then, the defense loses all of its strength. There are several reasons why sureties on bail bonds may be absolved from liability. If there is in fact no such court as named, the principal could not appear; if there was no date set, the principal would not know when to appear; but where there is merely a clerical misnomer in designating the court, or if it is designated by description so that the principal and his sureties would know when and where to appear, the sureties are

liable for default of their principal.    Russell, and his
sureties, knew where and when to appear, and Russell
*did*, according to his sureties' pleas, appear at the proper
time, and in the proper court, as required by the bond. His
departure without leave of court, warranted the estrea-
ture of his bond, and the subsequent proceedings against
the suerties for recovery of the penalty.    Upon examina-
tion of this entire case, it does not appear to this court
that the alleged errors complained of have resulted in a
miscarriage of justice, therefore, the judgment should be
sustained.    See Chapter 6223, Laws of Florida, Acts of
1911.

This practically disposes  of all  the  assignments of
error.    All the other pleas were based upon the alleged
variances which have heretofore been discussed and dis-
posed of.    There was no error which we consider reversi-
ble, and the judgment of the lower court will be affirmed
at the cost of the plaintiffs in error.

BROWNE, C. J. AND TAYLOR, WHITFIELD AND ELLIS, J. J.,
concur.

WEST, J., disqualified.